THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULES E. PLEVY, Appellant.

Second Department, May 7, 1979

## APPEARANCES OF COUNSEL

*Matthew Muraskin (Michael J. Obus* and *Richard Greenberg* of counsel), for appellant.

*Denis Dillon, District Attorney (Mark S. Adler* and *William C. Donnino* of counsel), for respondent.

## OPINION OF THE COURT

GULOTTA, J.

Defendant, Jules E. Plevy, stands convicted of burglary in the third degree and petit larceny following a jury trial. On appeal, his principal contention is that he was denied due process of law when the trial court ruled that he was collaterally estopped from contesting the legality of a police officer's entry onto his premises, which entry had been determined to be lawful in a prior murder prosecution in which the defendant was also a party. We believe that the trial court's ruling was proper under the circumstances of this case and therefore affirm.

In order to adequately explain why the doctrine of collateral estoppel may properly be invoked against this defendant, it will be necessary to recount certain aspects of the prior investigation and prosecution, which culminated in defendant's conviction for the murder of one Susan Macchio. That conviction was previously affirmed by this court *(People v Plevy,* 60 AD2d 896).

On September 26, 1975 Detective Harry Waltman of the Nassau County homicide squad was informed by the Lynbrook Police Department that one of its officers had recovered a tan plastic garbage bag containing female clothing, undergarments, a gag, a white surgical glove, a pair of blackened goggles and certain personal effects belonging to one Susan

Macchio, who was then listed as a missing person.[1] Upon canvassing the area where the bag had been found, the detective located a witness who had seen a man emerge from the house at 102 South Franklin Avenue carrying a tan plastic bag and then return a short while later without it. After obtaining a description of that person, he placed those premises under surveillance.

Later that day, Detective Waltman observed the shadows of two men and a woman silhouetted against a shade at 102 South Franklin Avenue, whereupon he approached the house and knocked on the door. A man (the defendant) answering the description of the individual who had been seen carrying the garbage bag, opened the door and a conversation followed. The detective informed this individual that his name had come up during the course of an investigation and that the police would like to question him at headquarters. The defendant answered that he would come, but asked if he might get a jacket first. The detective responded by asking the defendant if he could accompany him while getting the jacket, and the latter answered in the affirmative. At this juncture, they both went upstairs to the defendant's room. It is this purported consent to enter the premises which forms the crux of the problem on appeal.

While the detective was standing at the door to the defendant's room, which was in disarray, he saw inside a meat cleaver, a butcher knife, a surgical glove and a tan plastic garbage bag. Nothing was seized at that time, but these observations helped form the basis for the issuance of a search warrant in Nassau County on September 27, 1975. The observations of Detective Waltman also helped serve as the basis for the issuance of a Kings County search warrant on or about September 28, 1975, after the body had been found and identified. The execution of the Nassau County warrant on September 27, 1975 resulted in the seizure of the tan plastic garbage bag, the meat cleaver, the butcher knife and the surgical glove.

When the defendant's house was searched pursuant to the Nassau County warrant, the police observed a number of other items (including a serially numbered bank money bag

1. Ms. Macchio's body was apparently recovered nude in Kings County on September 26, 1975. Detective Waltman was not apprised of this fact until September 28, 1975, although he had formed the opinion on September 27, 1975 that she had been killed.

and a torn passport) which appeared to them to be suspicious, but which were not then seized.[2] Further investigation revealed that the money bag had been reported stolen two days prior to the search, while the passport was traced to a man whose office had been recently burglarized. Again, the Nassau Police applied for a search warrant based on these facts and observations, and the resulting search led to the seizure on September 29, 1975 of the items connecting the defendant with the instant burglary, as well as the seizure of certain other items pursuant to the contemporaneously executed Kings County warrant relating to the murder. The defendant was subsequently indicted in Kings County for murder and in Nassau County for burglary in the third degree, criminal possession of stolen property in the third degree and petit larceny.

In the Kings County murder prosecution, defendant's attorney moved to suppress the evidence seized on September 29, 1975 pursuant to the Kings County warrant and a hearing was held thereon. During that hearing, defendant's attorney cross-examined Detective Waltman extensively on the circumstances leading to his initial entry into the defendant's house, and when asked by the court why he was pursuing this line of inquiry, the attorney responded: "It is the defendant's contention that when detective Waltman entered the room, it constituted [a] trespass within the meaning of the Constitution and all the Federal cases * * * and if in fact that was a trespass, anything that was seized or observed is now tainted and is considered to be fruits of the poisoned tree, and is subject to suppression at any later hearing". At the conclusion of the hearing the court ruled that the detective's initial entry was lawful and authorized by the defendant and did not constitute a trespass. However, the court did suppress certain other evidence taken from the defendant's car because the Kings County search warrant did not authorize the search of a car. The defendant did not testify at this first suppression hearing, although the court advised him that he had the right to do so and that his testimony could not be used as evidence against him at his upcoming trial. Defendant contends that he declined to testify at the hearing since he was considering testifying at the murder trial and was concerned that any

---

2. For example, the torn passport bore the name of Herbert Zarin, whose name Detective Waltman recalled from a piece of paper found in the garbage bag containing Ms. Macchio's personal effects.

inconsistencies in his testimony could be used to impeach his credibility.

At the suppression hearing relating to the instant burglary prosecution, defendant offered to take the stand in order to prove that he never consented to the entry of Detective Waltman into his home. The court refused to hear this evidence on the ground that the defendant was collaterally estopped from relitigating this issue.

■ ■ We note initially that the doctrine of collateral estoppel is applicable to criminal proceedings, at least as against the People *(Ashe v Swenson,* 397 US 436; *United States v Oppenheimer,* 242 US 85; see, also, *Matter of Levy,* 37 NY2d 279; *Matter of McGrath v Gold,* 36 NY2d 406), and that, contrary to defendant's assertion, there would appear to be no bar to invoking the doctrine against a defendant, at least in those situations in which his right to a jury trial would not be prejudiced thereby (see *Steele v United States,* 267 US 505; *People v Williams,* 40 AD2d 586; Comment: The Use of Collateral Estoppel Against the Accused, 69 Col L Rev 515; see, also, *Ashe v Swenson,* 397 US 436, 464-465, *supra* [dissenting opn of BURGER, Ch. J.]; cf. *Sanders v United States,* 373 US 1; *United States v De Angelo,* 138 F2d 466, 468; *Rouse v State,* 202 Md 481, cert den 346 US 865). This established, we further note that it is not necessary to determine in the instant case whether the doctrine may be employed to establish an element of the defendant's guilt (see, e.g., *Pena-Cabanillas v United States,* 394 F2d 785), as the issue involved here is merely the applicability of the doctrine to a suppression ruling. In any event, it is well settled that before the principle may be invoked, the court must determine: (1) that there is an identity of issues in both proceedings; (2) that the issue was necessarily decided in the prior proceeding; and (3) that the party against whom the prior ruling is sought to be invoked has had a full and fair opportunity to contest that issue[3] *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71; see, also, *People v Reisman,* 29 NY2d 278, cert den 405 US 1041; *People v Lo Cicero,* 14 NY2d 374; *People v Williams, supra).* Moreover, because the consequences of invoking the doctrine may be severe, the Court of Appeals has

---

3. The doctrine of collateral estoppel is, of course, inapplicable to "unmixed question[s] of law" *(Matter of McGrath v Gold,* 36 NY2d 406, 411, *supra).* However, the legality of the officer's entry is a mixed question of law and fact (see *People v Oden,* 36 NY2d 382, 384), so that the doctrine may properly be invoked in this case.

stated that the "strict requirements" for the application of the doctrine "must be [fully] satisfied [in order] to insure that a party [will] not be precluded [thereby] from obtaining at least one full hearing on his or her claim" *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485). A trial court has been accorded broad discretion to determine whether the doctrine should be invoked in a particular case, and, when a plaintiff (or prosecutor) seeks to invoke it as part of his offensive strategy, a strong showing that the prior opportunity to litigate was adequate should be required (see *Parklane Hosiery Co. v Shore,* 439 US 322).

Applying the foregoing to the case at bar, it is clear that in both of these suppression hearings the legality of the detective's initial entry was a threshold issue before the court, since the "probable cause" supporting all of the warrants flowed in major part from the detective's initial observations. Defense counsel's energetic argument of this point at the first hearing is indicative of this fact and belies the present assertion that the issue was not necessarily before that court. Moreover, the risk of making inconsistent statements at the murder trial does not warrant the proffered conclusion that defendant did not have a meaningful opportunity to contest the issue at the prior hearing. He had such opportunity, and in addition, had a strong incentive to testify, since success at that hearing might have obviated the need to stand trial for murder (cf. *People v Williams,* 40 AD2d 586, *supra).*

Defendant further contends that the doctrine of collateral estoppel may never be applied to suppression orders, citing *Matter of McGrath v Gold* (36 NY2d 406, *supra).* We disagree.

In *McGrath,* petitioners sought to prohibit the District Attorney of Kings County from prosecuting them under a Kings County indictment for certain larceny-related offenses committed during April and May of 1972. They had been indicted for similar offenses in Queens County and although the counts of the indictments did not coincide, the Kings County District Attorney conceded that the automobiles and complainants involved in both indictments were the same. In 1973, in the Queens County case, Criminal Term granted petitioners' motions to controvert an eavesdropping warrant and a search warrant which had been based thereon. Subsequently, the court inspected the Grand Jury minutes and, after excising the evidence obtained as a result of the illegal search warrant, dismissed the Queens County indictment

because "there was 'insufficient legal evidence [before the Grand Jury] to sustain the indictment'" (p 410). No appeal was taken from that order. The *McGrath* petitioners then contended, *inter alia,* that the Kings County prosecutor should be precluded from pursuing his indictment on the basis of collateral estoppel. The Court of Appeals disagreed and determined that the requisite finality was lacking, in part because the dismissal was based upon a suppression order which was "interlocutory in nature" (p 412). Moreover, in the *McGrath* case the suppression order resulted in a dismissal pursuant to CPL 210.20 (subd 1, par [b]), which was stated to be nonfinal in the sense that the People could resubmit the charges to the same or another Grand Jury with the court's permission (CPL 210.20, subd 4). By way of contrast, in our case the order denying suppression in the murder prosecution became final and was reviewable upon the appeal from defendant's conviction (CPL 710.70, subd 2). Accordingly, it may be used as the basis for an estoppel.

A similar approach has recently been adopted by the Supreme Court, Bronx County, in *People v Scott* (93 Misc 2d 1074). The facts of *Scott* are remarkably analogous to the case at bar, and the court's reasoning there demonstrates the common sense and efficiency underlying our holding here today. The defendant therein (Scott) was involved in a single search and seizure which took place in The Bronx and which yielded two items of evidence relating to separate and distinct crimes. After being arrested in The Bronx for criminal possession of a handgun, Scott made incriminating statements to the police about a homicide he had committed in New York County. The defendant was subsequently indicted in The Bronx for criminal possession of a weapon in the third degree and in New York County for murder in the second degree. The defendant moved during his homicide prosecution to suppress his incriminating statements made during his Bronx detention on the specific ground that since there was no probable cause for his arrest, his statements were tainted as "fruit of the poisoned tree". The Supreme Court, New York County, specifically found that the arrest in The Bronx had been made upon probable cause and therefore denied the suppression motion. The defendant was ultimately convicted of the murder. When the defendant thereafter moved to contest the legality of his arrest in The Bronx County prosecution, the court held that he was precluded from relitigating

those facts. With respect to the issue of the finality of the suppression order, the court stated "[a]n order denying suppression is interlocutory, but once there is a conviction in the case * * * it becomes final and is appealable" *(People v Scott, supra,* p 1080). Accordingly, The Bronx Supreme Court granted conclusive effect to the finding of probable cause made in New York County (see, also, *United States ex rel. Di Giangiemo v Regan,* 528 F2d 1262, cert den 426 US 950; cf. *People v O'Neil,* 133 Ill App 2d 786).

The doctrine of collateral estoppel helps to preserve the finality of judicial decisions by eliminating the possibility of reaching conflicting results based upon the same facts. In addition, it operates to protect the judicial system from redundant litigation. Since the defendant herein has already had one "full opportunity to litigate [this] particular issue, he cannot reasonably demand a second one" (see *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 69, *supra).*

We have considered defendant's remaining contentions and find them to be lacking in merit.

O'CONNOR, J. P., RABIN and SHAPIRO, JJ., concur.

Judgment of the County Court, Nassau County, rendered February 2, 1977, affirmed.