STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RALPH
HERMAN INGENITO, DEFENDANT-APPELLANT.

Argued March 10, 1981—Decided July 27, 1981.

*Mary Ellen Shiever*, Assistant Deputy Public Defender, argued the cause for appellant *(Stanley C. Van Ness*, Public Defender, attorney).

*Simon Louis Rosenbach*, Deputy Attorney General, argued the cause for respondent *(Judith A. Yaskin*, Acting Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, J.

Ralph Ingenito was arrested and charged with numerous crimes in several indictments. One of the indictments charged, in multiple counts, several weapons offenses, namely the unlicensed transfer of weapons, prohibited by *N.J.S.A.* 2A:151–32, receipt of stolen property, proscribed by *N.J.S.A.* 2A:139–1, and possession of a firearm by a previously convicted felon, contrary to *N.J.S.A.* 2A:151–8.[1] Defendant moved to sever the counts charging the unlicensed transfer of a weapon and the receipt of stolen property, under *N.J.S.A.* 2A:151–32 and *N.J.S.A.* 2A:139–1, respectively, from the charge of possession of a weapon by a convicted felon under *N.J.S.A.* 2A:151–8. The court granted the motion on the ground that the prosecution of these combined counts would be unfair since evidence of a prior conviction that is essential to prove the charge under *N.J.S.A.* 2A:151–8 would be clearly irrelevant, prejudicial and inadmissible with respect to the transfer and possession charges. Accordingly, the charge for the violation of *N.J.S.A.* 2A:151–8 was severed and the trial on the remaining counts went forward.

At that trial, the prosecution contended that defendant, who described his occupation as a self-employed "flea market dealer," had sold four weapons illegally to one James Camp on four separate occasions, one of the guns having been stolen. Based primarily upon the testimony of Mr. Camp, as supplemented by

[1]These sections have been superseded by the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 *et seq., L.* 1978, *c.* 95.

Detective William Graham, Ingenito was convicted of the unlicensed transfer of weapons, but found not guilty of receiving stolen property. One week later he was brought to trial before a different jury on the previously severed charge of possession of a firearm by a convicted felon. This crime required that two things be proven in order for a conviction to obtain—that the defendant possessed a weapon and that he had a previous criminal conviction.

As to the second element, Ingenito stipulated that he had been convicted of breaking and entering and larceny in 1961. Hence, the State properly relied upon this stipulation as proof of a prior conviction. With respect to the element of possession, the prosecution decided to meet its burden by introducing a single piece of evidence—the county clerk's testimony of the record of defendant's recent conviction for the unlicensed transfer of the weapons, being the same unlicensed transfer that was the basis for the charge of possession in the ongoing trial. The trial court permitted the prosecutor to proceed in this fashion even though the prosecution did not show or assert that either the key witness or any other person who had testified in the earlier trial was unavailable. In fact, Mr. Camp was present in the courtroom during this second hearing.

The defendant objected to this prosecution tactic. The trial judge overruled this objection, however, believing that Ingenito had "ample opportunity to present his case" at the earlier trial and that, therefore, concerns of judicial and prosecutorial economy permitted the use of this technique. Upon denial of a motion to dismiss at the end of the State's case, the defense rested without introducing any evidence of its own. Based upon the stipulation of a prior conviction and the record of the conviction for the unlicensed transfer of weapons, Ingenito was convicted by the second jury of the charge of possession of a firearm by a convicted felon.

On appeal, he asserted that the prior conviction had been used as a collateral estoppel against him and that a criminal trial use

of that doctrine against a defendant was unconstitutional.[2] The Appellate Division rejected this contention and affirmed the conviction. 169 *N.J.Super.* 524 (1979).

A majority of the Appellate Division determined that the use of the prior conviction for the unlawful transfer of weapons, in the circumstances of this case, was not a true collateral estoppel because (1) the result in the earlier case was not binding upon the jury in the subsequent trial and (2) the defendant had been permitted to introduce evidence to challenge or controvert the fact of possession even though he chose not to do so. *Id.* at 531–532. Thus, since the record of the prior conviction was relevant because it had "some tendency in reason to prove the basic fact of possession, *Evid.R.* 1(2)," it was, in the view of the majority, properly admitted into evidence at the trial. *Id.*

Judge Morgan concurred with the judgment of her colleagues but for different reasons. She believed that the evidential use of the record of a prior conviction as the sole proof of an essential fact at a subsequent criminal trial of a different charge constituted, in reality, an attempt by the State to "benefit from the doctrine of collateral estoppel," notwithstanding the opportunity of the defendant to offer countervailing evidence. She concluded, however, that, in the circumstances of this case, collateral estoppel was constitutionally permissible. *Id.* at 533–535.

We granted the defendant's petition for certification on September 4, 1980, 85 *N.J.* 140.

---

[2] The defendant challenged the legitimacy of his indictments and verdicts on several additional grounds. The Appellate Division summarily rejected all but the collateral estoppel issue as "clearly without merit," pursuant to *R.* 2:11–3(e)(2). 169 *N.J.Super.* at 528–529. The disposition of these issues was correct.

The defendant also charged below that his sentences were manifestly excessive. The Appellate Division remanded this issue to the trial judge for a further explanation of the sentences. *Id.* at 532–533. The defendant was subsequently resentenced, and the revised sentences were affirmed in an unpublished opinion of the Appellate Division. That issue is not before this Court.

I

In *State v. Gonzalez*, 75 *N.J.* 181 (1977), this Court defined collateral estoppel as "that branch of the broader law of *res judicata* which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *Id.* at 186. Although first developed in civil litigation, it has been applied in criminal cases. See, *e. g., Ashe v. Swenson*, 397 *U.S.* 436, 443–444, 90 *S.Ct.* 1189, 1194, 25 *L.Ed.2d* 469, 475–476 (1970). However, the doctrine has been employed in criminal prosecutions primarily by formerly acquitted defendants, and, in that context, has been viewed as derivative of the Fifth Amendment's guarantee against double jeopardy for the same offense. *Id.; State v. Redinger*, 64 *N.J.* 41, 45–46 (1973); see Comment, "The Use of Collateral Estoppel Against the Accused," 69 *Colum.L.Rev.* 515 (1969); *cf. State v. Cioffe*, 130 *N.J.L.* 160 (E. & A. 1943) (double jeopardy does not apply to prosecutions by separate sovereigns; therefore, acquittal of a federal charge does not bar State prosecution for offense based on the same transaction); *United States v. Braunstein*, 474 *F.Supp.* 1, 8–9 (D.N.J.1979) (same).

The affirmative use of collateral estoppel *against* a defendant in a criminal prosecution is not predicated upon any constitutional mandate. In this case, to illustrate, the use by the State of the defendant's prior conviction was offered for reasons of convenience and expediency. Its approval by the trial court was based narrowly upon notions of judicial economy and the belief that defendant would not be unfairly treated since he had already had the opportunity fully to try the facts in issue in a preceding case and could offer additional proofs in the pending trial.

It is our view that the use of defendant's prior conviction in the trial of this case constituted collateral estoppel against the defendant and impinged upon his constitutional right of trial by jury, *U.S. Const.*, Amend. VI, *N.J. Const.* (1947), Art. I, ¶ 9.

Accordingly, we reverse the conviction below and remand the matter for a new trial.

## II

The right to trial by jury is one of the most cherished rights in the long history of our Anglo-American jurisprudence. It has existed since at least the Magna Charta and perhaps beyond, *Thompson v. Utah*, 170 *U.S.* 343, 349–350, 18 *S.Ct.* 620, 622, 42 *L.Ed.* 1061, 1066 (1898), and was included in the Declaration of Rights by the first Continental Congress, *Capital Traction Co. v. Hof*, 174 *U.S.* 1, 6, 19 *S.Ct.* 580, 582, 43 *L.Ed.* 873, 875 (1899), as well as the Declaration of Independence and two separate sections of the United States Constitution, Art. 3, § 2, cl. 3 and the Sixth Amendment. It has been made applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968), reh. den. 392 *U.S.* 947, 88 *S.Ct.* 2270, 20 *L.Ed.*2d 1412 (1968). In this State, the Constitution of 1776 expressly provided that "the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever." *N.J. Const.* (1776), Art. XXII. The right to "an impartial jury . . . in all criminal prosecutions" was similarly guaranteed by the 1844 Constitution, *N.J. Const.* (1844), Art. I, ¶ 7–8, and the present constitution of course, reaffirms that "the right to trial by jury shall remain inviolate." *N.J. Const.* (1947), Art. I, ¶ 9.

The issue in this proceeding is whether the use of collateral estoppel in a criminal trial impinges upon that enshrined right. As the jury right is "an object of deep interest and solicitude . . . each encroachment upon it has been watched with great jealousy." *Parsons v. Bedford*, 28 *U.S.* 433, 446, 7 *L.Ed.* 732, 736 (1830). "It is a constitutional guarantee . . . to be scrupulously protected from encroachment or impairment with respect to a criminal defendant." *State v. Simon*, 79 *N.J.* 191, 199 (1979).

Many strands are interwoven to make up the composite guarantee which constitutes the right to trial by jury in a criminal case. One major strand inheres in the nondelegable and nonremovable responsibility of the jury to decide the facts. While it is the court's province to decide the law, and to instruct the jury as to the principles of law that govern its deliberations, it is the jury, and the jury alone, that determines the facts. See, *e. g., Baltimore & C. Line v. Redman,* 295 *U.S.* 654, 657, 55 *S.Ct.* 890, 891, 79 *L.Ed.* 1636, 1638 (1935). The jury's fact-finding function is all-inclusive and encompasses the evaluation of the credibility of witnesses and the weight and worth of evidence. See, *e. g., Mattox v. United States,* 156 *U.S.* 237, 242–243, 15 *S.Ct.* 337, 339, 39 *L.Ed.* 409, 411 (1895).

The jury in the trial of a criminal case is responsible also for finding the truth. This entails not only the determination of basic facts but also the ultimate question of guilt or innocence. In the discharge of these fundamental responsibilities, the jury must consider solely the evidence adduced in the case before it. *Taylor v. Kentucky,* 436 *U.S.* 478, 485, 98 *S.Ct.* 1930, 1934, 56 *L.Ed.*2d 468, 475 (1978). It is therefore important that the evidence be as full and complete as possible in order to aid the search for truth and assure the just and correct result. It is not, however, the evidence of record that establishes a defendant's guilt or innocence but the jury's determination of the facts drawn from such evidence. The "question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury . . . ." *Bollenbach v. United States,* 326 *U.S.* 607, 614, 66 *S.Ct.* 402, 406, 90 *L.Ed.* 350, 355 (1946); *United States v. McClain,* 545 *F.*2d 988, 1003 (5 Cir. 1977) ("[w]hen the jury is not given an opportunity to decide a relevant factual question, it is not sufficient to urge that the record contains evidence that would support a finding of guilt even under a correct view of the law").

The responsibility of the jury in the domain of factual findings, and ultimate guilt or innocence, is so pronounced and

preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant. *Dunn v. United States*, 284 *U.S.* 390, 393–394, 52 *S.Ct.* 189, 190–191, 76 *L.Ed.* 356, 358–359 (1932). Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt. It may also refuse to return a verdict in spite of the adequacy of the evidence. *State v. Czachor*, 82 *N.J.* 392 (1980). This is indicative of a belief that the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole. See, *e. g., United States v. Quarles*, 350 *U.S.* 11, 18–19, 76 *S.Ct.* 1, 5–6, 100 *L.Ed.* 8, 15 (1955).

In a broad sense, the nature and scope of the right to a jury trial can be viewed in terms of these important functions that are ascribed to the jury and constitute the basic duties of the jury. In other contexts, involving different legal relationships, rights and duties are frequently viewed as correlative of one another, rights implying duties and, in turn, duties creating rights. See R. Dworkin, *Taking Rights Seriously*, 170–171 (1978); 1 W. Blackstone, *Commentaries on the Laws of England*, 123 (1809).

As delineated, these duties inherent in the jury function include determining the facts in the case, considering all of the relevant admissible evidence bearing upon the charges, evaluating the credibility of witnesses, assessing the weight and worth of evidence, and deciding the ultimate guilt or innocence of a defendant in light of the underlying evidence. A jury hamstrung in its ability to perform fully any of these vital functions cannot properly discharge its responsibilities. And, a jury failing in an essential duty cannot fulfill the constitutional right to a trial by jury which is guaranteed a criminal defendant. See *Sandstrom v. Montana*, 442 *U.S.* 510, 99 *S.Ct.* 2450, 61 *L.Ed.2d* 39 (1979). See also *United States v. United States Gypsum Co.*, 438 *U.S.* 422, 98 *S.Ct.* 2864, 57 *L.Ed.2d* 854 (1978); *Morissette v. United States*, 342 *U.S.* 246, 72 *S.Ct.* 240, 96 *L.Ed.* 288 (1952).

The application of collateral estoppel against a defendant constitutes an invasion of the factfinding and ultimate decisional functions of the jury. If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged.

The doctrine of collateral estoppel has still other untoward and adverse effects upon the jury right in a criminal case. We recognized in *State v. Czachor, supra,* that "the right to a free and untrammeled verdict . . . is the core of the right to trial by jury." 82 *N.J.* at 400. Implicated in this concept of the jury's decisional function is the severe burden of proof that is imposed upon the State in the prosecution of a criminal case, and, as a constituent element of that burden of proof, the presumption of innocence which the jury must retain and apply throughout its deliberations until it becomes convinced beyond a reasonable doubt of the guilt of the defendant.

The requirement that a defendant be presumed innocent until proven guilty beyond a reasonable doubt has a status in our criminal law of primordial origin. *Coffin v. United States,* 156 *U.S.* 432, 454–456, 15 *S.Ct.* 394, 403, 39 *L.Ed.* 481, 491–492 (1894). In essence, its foundation is a repugnance to the notion that a person be punished arbitrarily or without cause. The sanctions of society in the form of criminal punishment are to be exacted only when an appropriate decisional tribunal—giving the accused the benefit of every doubt—can conclude with complete confidence, after having had the opportunity to consider and weigh the facts, that the charged party committed the crime. *Id.* The United States Supreme Court has stated on numerous occasions that "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams,* 425 *U.S.* 501, 503, 96 *S.Ct.* 1691, 1692, 48 *L.Ed.*2d 126, 130 (1976),

reh. den. 426 *U.S.* 954, 96 *S.Ct.* 3182, 49 *L.Ed.*2d 1194 (1976); *Taylor v. Kentucky, supra,* 436 *U.S.* at 479, 98 *S.Ct.* at 1931, 56 *L.Ed.*2d at 471.

■ The presumption of innocence has frequently been regarded as integrally related to the requirement that every element of a crime must be proven beyond a reasonable doubt before a conviction may obtain. An instruction to the jury on the presumption of innocence is often required in order to keep the State's burden of proof fully weighted and firmly in place. It must be given when necessary to "safeguard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Taylor v. Kentucky, supra,* 436 *U.S.* at 485–486, 98 *S.Ct.* at 1935, 56 *L.Ed.*2d at 475. "To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process." *Estelle v. Williams, supra,* 425 *U.S.* at 503, 96 *S.Ct.* at 1693, 48 *L.Ed.*2d at 130.

While this presumption is often thought of as a due process right, *e. g., Taylor v. Kentucky, supra,* its strictures are intertwined with the substantive right of trial by jury itself. There are numerous cases that stand for the proposition that, viewing the jury in a realistic light, a court must take care to ensure that the jury enter its deliberations without preconceived views as to the existence of any essential element of the offense or the guilt of the defendant. Accordingly, the presumed innocence of a defendant must be given unflagging protection throughout the entire proceedings before a jury.

In *Sandstrom v. Montana, supra,* for example, a jury charge that might conceivably have been interpreted as a conclusive presumption as to an element of the offense was deemed to violate constitutional principles of due process. This, because it would conflict with the presumption of innocence as to every element of a crime and impermissibly shift the burden of proof to the defendant, as well as impinge upon the factfinding

function of the jury. Principles of the jury right were an interstitial part of this due process based decision.[3]

Similarly, in *State v. Humphreys*, 54 *N.J.* 406 (1969), we invalidated a jury charge, based upon a statute, that instructed that "[t]he presence of a firearm ... in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time." We did so, despite a belief that there may have been a rational connection for the presumption under the facts of the given case, because it improperly relieved the State of part of its burden of proof. We further noted:

> The objection to the statute could be framed as well in terms of an unfair limitation on the defendant's right to a jury trial. The "deliberative function of the jury is improperly circumscribed ... by [its] being told that the presumption springs into existence as a matter of law ...." *State v. Corby, supra,* 28 *N.J.* [106] at 115. And further, the validity of a charge to the jury describing the defendant's "presumption" of innocence is undermined by a contrary presumption read to it by the trial judge. [*Id.* at 416.][4]

In *United States v. Spock*, 416 *F.*2d 165 (1 Cir. 1969), parallel concerns relating to the jury right and due process were recog-

---

[3]That the jury right is contained within broader due process standards is highlighted by *Duncan v. Louisiana*, 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968), reh. den. 392 *U.S.* 947, 88 *S.Ct.* 2270, 20 *L.Ed.*2d 1412 (1968) which made the jury right applicable to the states via the Fourteenth Amendment. Thus the reliance upon due process, as opposed to the jury trial right, on the part of some of these cases should not give analytical pause.

[4]Along these lines we note the recent recommendation of our Special Joint Subcommittee of the Civil and Criminal Practice Committees to make our evidentiary rules relating to presumptions inapplicable to criminal cases where they would be used to prove an element of the offense that would otherwise have to be proved by the introduction of an additional fact or facts. Proposed *Evid.R.* 15. The genesis for its proposal was, in part, the recognition that "[t]he State may not be statutorily or otherwise relieved of its obligation to prove each element of the offense nor may the burden of proof as to any element be shifted to the accused. The jury's preemptive fact-finding role may not be statutorily or otherwise diluted or encroached upon." Draft Comments of the Special Joint Subcommittee of the Civil and Criminal Practice Committee to Proposed Evidence Rules 13, 14 and 15, Attachment 3, presented at the Judicial Conference (June 26, 1981) quoting from the 1980 Report of the Supreme Court's Committee on Civil Practice, 105 *N.J.L.J.* 425, 429 (May 8, 1980).

nized. The presentation of special questions to a jury was held constitutionally impermissible because it was believed that such interrogatories had a potentially coercive effect upon juror deliberations. The court noted that

> [An] uppermost . . . consideration is the principle that the jury, as the conscience of the community, must be permitted to look at more than logic . . . If it were otherwise there would be no more reason why a verdict should not be directed against a defendant in a criminal case than in a civil one. The constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly. [416 *F.* 2d at 182.]

In *State v. Simon, supra,* we likewise concluded that there had been an impairment of the jury function through the presentation of special interrogatories to a jury because they subliminally induced jurors to think in terms of the defendant's guilt before they were fully instructed by the court and proper deliberations were to begin. It was believed that such interrogatories "constitute a form of mental conditioning which is antithetical to the untrammeled functioning of the jury." 79 *N.J.* at 200.

Another case that addressed a similar problem is *State v. Christener,* 71 *N.J.* 55 (1976). In *Christener,* the jury was read a charge pertaining to first degree murder even though the facts were clearly not sufficient to convict on such a crime. This was held reversible error, even though the jury reached a verdict of not guilty on the first degree murder charge, because of "the potentially prejudicial influence that an unsupported instruction will wield in jury deliberation." 71 *N.J.* at 71. These cases emphasize that the jury right includes certain intangible—but very real—benefits to a defendant that are lost if a jury is induced to think in terms of guilt, instead of presumed innocence, before its deliberations have begun.

■ Accordingly, we conclude that collateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its quest for truth by removing significant facts from the deliberative process, but it constitutes

a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations. Hence, the collateral estoppel doctrine, which serves to establish virtually conclusive evidence of a critical element of criminal guilt, cripples the jury in the discharge of its essential responsibilities contrary to the constitutional guarantees of the jury right in a criminal trial.[5]

These considerations lead us to conclude that the right to a jury in a criminal trial ordinarily includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense. Unless the same jury is permitted to deliberate meaningfully upon all of the issues that are crucial to a verdict of guilt or innocence of the particular crime charged, a defendant will not have secured the jury right contemplated by the Constitution.[6] Collateral estoppel against a defendant in the context of the criminal trial is inconsistent with this proposition.[7]

---

[5]We recognize that many of the concerns that we have expressed in the jury right context implicate broader due process considerations. *Ante* at 214–215. Since we find that these considerations are magnified in terms of the jury trial function and infringe upon the constitutional right to a jury, we need not determine whether due process standards also invalidate this practice. Furthermore, it is not suggested that the use of collateral estoppel, independent of its infringement of the jury right, violates notions of "fundamental fairness." See *State v. Gregory*, 66 *N.J.* 510 (1975).

[6]The State has proposed a procedural alternative to the prosecutorial use of collateral estoppel that was employed in this case, *viz*:

[A]ll charges that do not entail any divulgence of defendant's previous record [should] be tried first. Upon returning a guilty verdict on these initial charges, however, the jury should not be discharged. Rather, after the re-impanelment of any previously designated alternates, the prosecutor should be permitted to reopen this case and prove the previous felonies. After defendant defends against only the newly introduced evidence, the trial judge should instruct the jury again, providing them with the charge appropriate to possession of a weapon by a previously convicted felon. In this way, the defendant's background is not divulged

## III

The State raises the additional contention that the use of the prior conviction in this case was not a true collateral estoppel. A majority of the Appellate Division believed that collateral

until it is pertinent, while at the same time, needed economies are achieved.

This procedure is similar to bifurcation which has been utilized in varying forms. The State's proposal, however, would not entail a bifurcation of the jury—a split jury as it were; rather, it suggests a bifurcation of *issues* to be tried sequentially by the *same* jury. This would enable the *same* jury to try *all* of the elements of the charge, although not at the same time. We note this suggestion but do not pass upon either its validity or feasibility since it was not directly involved in the trial of this case or raised as an issue on appeal.

[7]We note the dicta in many cases supporting this determination. *United States v. DeAngelo*, 138 *F.*2d 466, 468 (3 Cir. 1943); *United States v. Bruno*, 333 *F.Supp.* 570, 576 (E.D.Pa.1971); *United States v. Carlisi*, 32 *F.Supp.* 479, 482 (E.D.N.Y.1940); *State v. Thomas*, 114 *N.J.Super.* 360, 370–371 (Law Div.1971), mod. on other grounds, 61 *N.J.* 314 (1972); see *Rouse v. State*, 202 *Md.* 481, 489, 97 *A.*2d 285, 289 (1953), *cert.* den. 346 *U.S.* 865, 74 *S.Ct.* 104, 98 *L.Ed.* 376 (1953); *cf. Hodges v. Easton*, 106 *U.S.* 408, 412, 1 *S.Ct.* 307, 311, 27 *L.Ed.* 169, 171 (1882) (in a civil jury case, "[t]he court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and itself determine the remainder, without a waiver by the defendants of a verdict by the jury.")

We also acknowledge that several recent cases have permitted the use of collateral estoppel, the jury right notwithstanding. *E.g., Hernandez-Uribe v. United States*, 515 *F.*2d 20 (8 Cir. 1975), *cert.* den. 423 *U.S.* 1057, 96 *S.Ct.* 791, 46 *L.Ed.*2d 647 (1976); *United States v. Colacurcio*, 514 *F.*2d 1 (9 Cir. 1975); *Pena-Cabanillas v. United States*, 394 *F.*2d 785 (9 Cir. 1968); *United States v. Rangel-Perez*, 179 *F.Supp.* 619 (S.D.Cal.1959); *Carmody v. Seventh Judicial District Court*, 81 *Nev.* 83, 398 *P.*2d 706 (1965); *People v. Mojado*, 22 *Cal.App.*2d 323, 70 *P.*2d 1015 (1937); *People v. Plevy*, 67 *A.D.*2d 591, 416 *N.Y.S.*2d 41 (1979); *State v. Braskett*, 10 *Ohio Op.*2d 497, 162 *N.E.*2d 922 (Ct.Com.Pl.1959). Most of these cases are limited to instances where the issue foreclosed involved status or did not go to the core of the crime charged or where the proceeding in which estoppel was invoked did not involve a jury trial. Other cases cited by the concurring opinion date back almost a century or more, *Commonwealth v. Ellis*, 160 *Mass.* 165, 35 *N.E.* 773 (1893), *Commonwealth v. Feldman*, 131 *Mass.* 588 (1881); *Commonwealth v. Evans*, 101 *Mass.* 25 (1869); *State v. Sargood*, 80 *Vt.* 412, 68 *A.* 51 (1907). To the extent that the analyses or holdings of any of these cases are particularly relevant to the factual posture of this case, we do not believe they adequately or correctly treat the issue of collateral estoppel as violative of the jury right and find them to be unpersuasive authority.

estoppel was not involved in the case because the conviction from the earlier case was not binding upon the jury in this case and the defendant was free to introduce evidence to controvert the fact of possession, although he had chosen not to do so. 169 *N.J.Super.* at 530–532. Accordingly, it ruled that the evidence was admissible as relevant to a material fact under *Evid.R.* 1(2). Likewise, our concurring colleague, Justice Schreiber, views this case as presenting merely an evidential question; he, however, would also reverse the judgment of the court below on the ground that the evidence is inadmissible under *Evid.R.* 63(20). Consistent with our perception of the fundamental issue in this appeal, the concurring opinion of Judge Morgan in the Appellate Division viewed the case as involving the doctrine of collateral estoppel. She concluded, however, unlike this Court, that under the circumstances present here, this was permissible. *Id.* at 534–535.

We believe that the use of the prior conviction in this case was not merely evidential in character, but amounted to *de facto* collateral estoppel. The technique constituted a preclusive device serving to establish affirmatively an essential element of the crime charged, rather than one leading merely to the admissibility of a piece of evidence generally relevant to the underlying charges. It must therefore realistically be analyzed in its true light in order to adequately resolve the actual issue presented by this case.[8]

---

[8] In this case, while the concurring opinion views the defendant's objections as based upon the hearsay character of the criminal conviction, warranting a reversal on evidential grounds, post at 222–224, the record suggests that the objection was based upon notions of the defendant's constitutional right to a fair trial. This illustrates that an evidential ground of decision is unsatisfactory and leaves the important issues raised here largely unresolved.

Even were we to agree that a determination as to the inadmissibility of a prior crime on evidential grounds would somehow supplant a general constitutional consideration of the use of that criminal conviction as collateral estoppel, we do not believe that such a nonconstitutional ground clearly presents itself to this Court. The admissibility of a prior conviction

Although the defendant may have been theoretically free to introduce evidence to the contrary, that did not overcome the preclusive and conclusive evidential effects of the prior conviction. "[T]he ultimate test of any device's constitutional validity remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Ulster County Court v. Allen,* 442 *U.S.* 140, 156, 99 *S.Ct.* 2213, 2224, 60 *L.Ed.*2d 777, 791 (1979). The effect of the prosecution's submission of the prior conviction in this case was to create a near-mandatory presumption in the minds of the jurors as to the guilt of the defendant. Although the charge to the jury in this case did not use the language of presumption, we believe that the manner of the State's presentation had the same effect upon the jury. The normal jury process, whereby evidence is admitted and the jury is enjoined to draw inferences as to each element of the offense, is vitiated where a prior conviction constitutes the sole evidence proffered by the prosecution. In short, the constitutional ramifications of the technique employed in the context of the trial below were indistinguishable from "collateral estoppel."

For these reasons, we reverse the judgment below and remand for a new trial.

SCHREIBER, J., concurring in result.

The Appellate Division correctly referred to the "real issue" in this case as being the "admissibility of evidence." See 169 *N.J.Super.* 524, 531 (App.Div.1979). In its haste to decide a sharply controversial collateral estoppel question containing difficult and serious constitutional ramifications the majority has relegated the evidence issue to a reference in a footnote, *ante* at

can be the subject of several evidence rules, *i. e., Evid.R.* 63(20), 55 and 4. Since the intricacies of the interaction between these evidential rules have not been the focus of this litigation, we refrain from addressing such evidential questions until a more appropriate case is before us.

219–220 n.8, despite the objections at the trial and the briefs and argument of counsel on the evidence issue. Since the controversy may be resolved on a non-constitutional basis, I opt for that solution, keeping in mind Justice Clifford's observant warning in *State v. Saunders*, 75 *N.J.* 200 (1977):

> First, there is the sound, oft-expressed principle that constitutional questions should not be reached and resolved unless absolutely imperative in the disposition of the litigation. While the adjudicative process admits of few unyielding rules, this maxim comes as close as any to being an absolute.... Inasmuch as there may be another, non-constitutional basis for decision, we should heed that admonition and defer addressing the constitutional question here. [*Id.* at 229–230 (Clifford, J., dissenting) (citations omitted)]

The evidentiary nature of the problem is clear when the matter is put into the context of the trial. Defendant acted *pro se*. He objected during the State's opening to the prosecutor's reference to "a recent conviction which I feel has no part in this case at all and was done with the idea of prejudicing me...." In his opening defendant asserted that he "did not possess these weapons at any time" and requested the jury "to keep an open mind ... until you have heard all the facts before reaching a verdict." Defendant stipulated to the 1961 conviction and agreed that the record of conviction is "admissible and the copies can go into evidence." Defendant again objected when the prosecutor began to introduce through the county clerk the convictions, which a jury had returned a week earlier, of transferring, assigning and disposing of certain weapons without being licensed as a dealer in firearms. The trial court overruled the objection on the ground that "the State can attempt to prove their case in any competent and proper way that they see fit to do so."

At the conclusion of the State's case the public defender assigned to assist the defendant moved for a dismissal on the ground that defendant had an absolute right to cross-examine and confront the witnesses who had evidence of the crime. The trial court denied the motion. In summation the defendant stated that the jury had no opportunity to consider the credibility of the witnesses, that the State did not produce one fact

witness, and that he "was never found in possession of any of the weapons." It might be noted that the trial court never charged the jury on collateral estoppel or precluded the defendant from offering evidence on the issue of possession.

## I

Bypassing the question of whether an inference of possession can be drawn from his conviction of transferring, assigning and disposing of weapons, I am satisfied that the objections made by this lay defendant were clearly directed to the hearsay characteristic of the record of convictions.

Hearsay is defined, under our Rules of Evidence, as "[e]vidence of a statement offered to prove the truth of the matter stated which is made other than by a witness while testifying at the hearing...." *Evid.R.* 63. "The hearing" is defined as that "hearing at which the question under a rule is raised, and not some earlier or later hearing." *Evid.R.* 1(7). All statements which fall under this definition of hearsay are inadmissible upon objection unless they fall within one of the hearsay exceptions enumerated in *Evid.R.* 63(1) through 63(32). *Evid.R.* 63.

Utilizing these definitions, the introduction of a record of a prior conviction to prove the facts underlying the judgment is clearly hearsay, as it is a "statement" introduced to prove the truth of the matter asserted that has not been made by a witness at the hearing in which it is introduced. See *National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence* Rule 63(20), Comment, at 206 (1953). The question then is whether the placing of the prior conviction into evidence can be justified under an exception to the general prohibition against hearsay evidence.

An examination of Rule 63(20), the rule that explicitly provides for the admission of previous convictions of crime into evidence, strongly indicates that the record of the conviction employed in this case was not meant to be admissible under a hearsay exception.

Rule 63(20) reads as follows:

> *In a civil proceeding*, except as otherwise provided by court order on acceptance of a plea, evidence is admissible of a final judgment against a party adjudging him guilty of an indictable offense in New Jersey or of an offense which would constitute an indictable offense if committed in this state, as against that party to prove any fact essential to sustain the judgment. [emphasis added]

The rule's limitation to civil proceedings was no accident. The New Jersey Supreme Court Committee on Evidence, which drafted the rules, used as its starting point the Uniform Rules of Evidence prepared by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association in 1953. Uniform Rule 63(20) excepted from the hearsay bar "[e]vidence of a final judgment adjudging a person guilty of a felony, to prove any fact essential to sustain the judgment." The Supreme Court Committee rejected that proposal and recommended the exception be restricted to civil cases. Its report states:

> Rule 63(20) is limited to civil cases. It is felt that the stakes are too high in a criminal proceeding to permit the use of prior convictions as evidence. This is a controversial question and the Court should consider whether they wish the Rule to be limited to civil actions. [*Report of the New Jersey Supreme Court Committee on Evidence* Rule 63(20), Comment, at 197 (1963)]

In this respect, *Evid.R.* 63(20) can be contrasted with *Fed.R. Evid.* 803(22) which creates the following hearsay exception:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

This Court chose not to follow that route in approving the Rules of Evidence and, while modifying the committee's proposed rule in other respects, did not alter the Rule's singular applicability to civil proceedings. The clear intent of 63(20), as well as its literal terms, was to limit the admissibility of prior convictions "to prove any facts essential to sustain the judgment" to civil cases. Thus, admissibility of a prior conviction record to prove facts established therein and essential in a

subsequent criminal proceeding would appear to be subject to the hearsay objection.

It is recognized, of course, that a prior conviction may be introduced in criminal proceedings for special purposes which do not implicate the hearsay rule. For example, a prior conviction may be used not as substantive evidence but to attack the credibility of a witness. *N.J.S.A.* 2A:81–12; *State v. Sands*, 76 *N.J.* 127 (1978). A prior conviction may also be introduced when the fact of conviction itself constitutes an essential element of proof in the subsequent prosecution. This is illustrated in the present case by the defendant's stipulation of a 1961 conviction as admissible proof of his status as a previously convicted felon under *N.J.S.A.* 2A:151–8 (now replaced by *N.J.S.A.* 2C:39–7 of the New Jersey Code of Criminal Justice). Such specialized uses of prior convictions are not present in regard to the use of the unlicensed transfer conviction in this prosecution.

The State has also asserted that *Evid.R.* 55 independently permits the introduction of Ingenito's prior conviction, a point not previously raised in these proceedings. *Evid.R.* 55 states that evidence that a person committed a crime on a specified occasion is admissible "to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident." What the State overlooks is that proof of the other crime should be direct evidence of that crime, not hearsay. Generally, evidence, though relevant and material, is subject to the hearsay rules. See *Evid.R.* 63; *Uniform Rules of Evidence* Rule 63, Comment, at 197; *State v. Hummel*, 132 *N.J.Super.* 412, 424–425 (App.Div.1975), certif. den., 67 *N.J.* 102 (1975) (evidence admissible under *Evid.R.* 55 excluded as hearsay); *cf. State v. Atkins*, 78 *N.J.* 454 (1979) (prior convictions admitted under *Evid.R.* 55 in the absence of any hearsay objection).[1]

---

[1] This admission conforms with the rule that hearsay evidence not objected to is evidential. See *Smith v. Delaware & Atl. Tel. & Tel. Co.*, 63 *N.J.Eq.* 93,

The record of conviction having been improperly admitted into evidence,[2] the conviction cannot stand and the cause must be remanded for a new trial.

## II

The majority has chosen to decide this case on the ground that a defendant's constitutional right of trial by jury forecloses the applicability of collateral estoppel. It contends that two principal reasons justify this conclusion, *viz.*, collateral estoppel prevents one jury from considering all the significant facts and constitutes a "gravitational pull toward a guilty verdict." *Ante* at 216–217.

This rationale is flawed. It confuses rules of evidence, the constitutional right of confrontation and the constitutional right to trial by jury. The Sixth Amendment provides that an accused shall enjoy the right to a trial "by an impartial jury" as well as the right "to be confronted with the witnesses against him." The constitutional aspect of the right to trial by jury, historically at least, was directed to afford a person trial by

---

95 (Ch.1902), aff'd 64 *N.J.Eq.* 770 (E. & A.1902); *In re Petagno*, 24 *N.J.Misc.* 279, 283–284 (Ch.1946); *C. McCormick, Evidence*, § 245 at 584 (2d ed. 1972); Annotation, "Consideration, in determining facts, of inadmissible hearsay evidence introduced without objection," 79 *A.L.R.2d* 890 (1961).

[2]The State did not request the court to take judicial notice of the records of conviction pursuant to *Evid.R.* 9(2)(b). Admissibility under this rule is not subject to the hearsay objection. *Evid.R.* 10(2)(b). Query whether judicial notice of such records would prove the contents of the conviction aside from the conviction itself.

The State did not claim the record of conviction admissible under *Evid.R.* 63(17), which excepts from the hearsay objection copies of official records which are admissible to prove the contents of the records. In its supplemental brief, the State contends that the record was admissible under *Evid.R.* 63(15), which excepts reports and findings of public officials of acts done or observed by them. This is doubtful since the county clerk did not observe the jury return its verdict. Moreover, it is questionable whether *Evid.R.* 63(15) or (17) would apply in this situation in view of *Evid.R.* 63(20).

independent people rather than by someone under the control of the government. The concept of a group was ascribed to the reluctance to entrust life and liberty to one person. *Duncan v. Louisiana*, 391 *U.S.* 145, 155–156, 88 *S.Ct.* 1444, 1450–1451, 20 *L.Ed.*2d 491, 499–500 (1968). I do not believe that the constitutional right to trial by an impartial jury includes an obligation to present every parcel of direct evidence to a jury. History, logic, and policy do not support that position.

Constitutional principles of double jeopardy and confrontation adequately protect and assure a defendant of a fair trial. A critical point that the majority overlooks is that, when collateral estoppel is applied, the defendant has already had a jury hear, examine and sift the testimony of the witnesses during the prior trial. The truth of a particular fact has been established. The second jury therefore is assisted in its quest for the truth in the same fashion as when a stipulation of fact has been presented to it.

The fact that collateral estoppel may establish a link in proving the defendant's guilt admittedly is a "gravitational pull toward a guilty verdict." Obviously, evidence that indicates a defendant is guilty, particularly admissions and confessions, tends to establish that guilt and may well color a juror's appreciation of the defendant's conduct. Moreover, some significant facts may be established without formal proof. See *Evid.R.* 9 (judicial notice). The majority concludes that because in some situations that tendency has been *improperly* generated, the same conclusion follows when collateral estoppel is applied. This reason ignores the desirability and logic of collateral estoppel, which is the preclusion of litigation of any issue actually determined between the same parties involving a different claim. *Ashe v. Swenson*, 397 *U.S.* 436, 443, 90 *S.Ct.* 1189, 1194, 25 *L.Ed.*2d 469, 475 (1970); *State v. Gonzalez*, 75 *N.J.* 181, 186 (1977). In not one of the cases cited for its proposition has the majority referred to a situation where a defendant had been afforded the right of examination at a prior trial. *Sandstrom v. Montana*, 442 *U.S.* 510, 99 *S.Ct.* 2450, 61 *L.Ed.*2d 39 (1979), and

*State v. Humphreys*, 54 *N.J.* 406 (1969), held unconstitutional jury instructions that could have been interpreted as requiring a conclusive presumption of a fact necessary to convict because due process required proof beyond a reasonable doubt of every such fact. In *United States v. Spock*, 416 *F.*2d 165 (1 Cir. 1969); *State v. Simon*, 79 *N.J.* 191 (1979), and *State v. Christener*, 71 *N.J.* 55 (1976), jury instructions or interrogatories were found unduly suggestive of the defendant's guilt. None dealt with the situation where a defendant had already had an opportunity to confront, examine and cross-examine all the witnesses and a jury had resolved the factual issues against the defendant.

Courts which have decided the question have permitted the use of collateral estoppel against a defendant.[3] See, *e. g.,* *Hernandez-Uribe v. United States*, 515 *F.*2d 20 (8 Cir. 1975), *cert.* den., 423 *U.S.* 1057, 96 *S.Ct.* 791, 46 *L.Ed.*2d 647 (1976) (defendant previously convicted of illegal entry could not relitigate alienage in trial for unlawful re-entry); *United States v. Colacurcio*, 514 *F.*2d 1 (9 Cir. 1975) (defendant previously convicted of conspiracy to promote gambling could not relitigate receipt of money from gambling operation in tax evasion case); *Pena-Cabanillas v. United States*, 394 *F.*2d 785 (9 Cir. 1968) (alienage); *United States v. Rangel-Perez*, 179 *F.Supp.* 619 (S.D.Cal.1959) (alienage); *People v. Mojado*, 22 *Cal.App.*2d 323, 70 *P.*2d 1015 (Dist.Ct.App.1937) (paternity could not be relitigated in second child support trial); *Commonwealth v. Ellis*, 160

---

[3]The cases cited by the majority do not hold to the contrary. For example, *United States v. DeAngelo*, 138 *F.*2d 466 (3 Cir. 1943), held that a defendant on trial for conspiracy was entitled to put into evidence a judgment of acquittal of robbery and thereby preclude the government from relitigating the defendant's presence at and participation in the perpetration of the robbery. Such factual preclusion did not bar defendant's prosecution on the conspiracy indictment and no question of double jeopardy was involved. *United States v. Bruno*, 333 *F.Supp.* 570 (E.D.Pa.1971), and *United States v. Carlisi*, 32 *F.Supp.* 479 (E.D.N.Y.1940), also involved the preclusive effect of a defendant's prior *acquittal*. The only comfort the majority may derive from these decisions is some dictum referring to the concept that mutuality is not a condition precedent to the applicability of collateral estoppel.

*Mass.* 165, 35 *N.E.* 773 (Sup.Jud.Ct.1893) (paternity); *Commonwealth v. Feldman,* 131 *Mass.* 588 (Sup.Jud.Ct.1881) (defendant previously convicted of drunkenness could not relitigate that drunkenness in trial for assault while in a drunken condition); *Commonwealth v. Evans,* 101 *Mass.* 25 (Sup.Jud.Ct.1869) (defendant previously convicted of assault could not relitigate self-defense in manslaughter trial following death of victim); *Carmody v. Seventh Judicial District Court,* 81 *Nev.* 83, 398 *P.2d* 706 (Sup.Ct.1965) (dictum) (determination that defendants committed robbery may not be relitigated in trial for murder after victim's death); *People v. Plevy,* 67 *App.Div.*2d 591, 416 *N.Y.S.* 2d 41 (1979) (defendant previously convicted of murder on basis of evidence seized by police could not relitigate legality of search in subsequent robbery trial); *State v. Braskett,* 10 *Ohio Op.*2d 497, 162 *N.E.*2d 922 (Ct.Com.Pleas 1959) (paternity); *State v. Sargood,* 80 *Vt.* 412, 68 *A.* 51 (Sup.Ct.1907) (determination that defendant had killed colts by poisoning their well precluded relitigation that defendant had poisoned the well in action for death of an individual).[4]  Contrary to the majority's assertion, *ante* at 218 n.7, most of these cases applied collateral estoppel to a "core" issue.  The majority does not suggest any rational basis for distinguishing the status cases, which also applied collateral estoppel to the core of the crime charged.

Collateral estoppel rests on sound public policy principles. Witnesses are spared from being recalled to testify about facts already proven at an earlier trial; judges, jurors and prosecutors are freed sooner for other trials, and verdict consistency is encouraged.  These purposes are no less compelling where the trials were bifurcated to protect the defendant, see *State v. Middleton,* 143 *N.J.Super.* 18 (App.Div.1976), aff'd *p. c. o. b.* 75

---

[4]The majority implicitly criticizes the Massachusetts and Vermont cases because they "date back almost a century or more." *Ante* at 218 n.7.  This is a curious criticism indeed, particularly in view of the awareness of the long held cherished right of trial by jury expressed in the Magna Charta and in the Declaration of Rights, *ante* at 210.

*N.J.* 47 (1977). Assuming that the record of prior convictions had been properly admitted into evidence, I perceive of no adequate reason to require unnecessary relitigation where a defendant has had a fair trial on all the issues and his right of confrontation has been adequately protected.

I would reverse and remand for a new trial because of the erroneous admission into evidence of the prior convictions.

SCHREIBER, J., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK–7.

*For affirmance*—None.