Sullivan
No. 83-028

# THE STATE OF NEW HAMPSHIRE

v.

# KATHLEEN KAPLAN

December 29, 1983

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief and orally), for the State.

*Cristiano, Kromphold, Green, McMahon & Heed*, of Keene, and *Upton, Sanders & Smith*, of Concord (*Peter W. Heed* and *Russell F. Hilliard* on the brief, and *Mr. Heed* orally), for the defendant.

BROCK, J. The defendant, Kathleen Kaplan, appeals from the denial of her motion to dismiss a complaint charging her as an accomplice to second-degree murder. At the time the motion was filed, she had already pled guilty to the complaint but had not been sentenced. Subsequent to her plea, the named principal was tried and acquitted. The issue that we must decide is whether the doctrine of nonmutual collateral estoppel should be applied so as to bar the prosecution of an accomplice in a criminal case when the named principal has been acquitted. We hold that the doctrine should not be applied and affirm the denial of the motion to dismiss.

The defendant and William Gagne were originally indicted for the crime of capital murder in the death of the defendant's husband. The State subsequently *nol prossed* these indictments, and in September 1982, pursuant to an agreement, the defendant waived indictment and pled guilty to a complaint charging her as an accomplice

to second-degree murder, RSA 630:1-b and RSA 626:8. The complaint alleged that the defendant

> "did commit the crime of accomplice to second degree murder in that, with the purpose of promoting Morton Kaplan's death, she purposely solicited William Gagne to cause Morton Kaplan's death, and William Gagne purposely caused Morton Kaplan's death by shooting him in the head two (2) times with a firearm.
>
> Kathleen Kaplan purposely solicited William Gagne by agreeing to pay him Five Thousand Dollars ($5,000.00) in exchange for Morton Kaplan's death."

William Gagne was reindicted for first-degree murder. The defendant testified at Gagne's trial as a witness for the State. On October 21, 1982, Gagne was found not guilty of first-degree murder and of the lesser-included offenses of second-degree murder and manslaughter.

On November 30, 1982, the defendant moved to dismiss (for the apparent purpose of vacating her plea) the charge against her, arguing that Gagne's acquittal collaterally estopped the State from alleging or proving that Gagne murdered her husband, which the defendant contends is an essential element of the offense to which she had pled guilty. On December 21, 1982, the Trial Court (*DiClerico*, J.) denied the motion. The court concluded that under RSA 626:8, the State would not be required to prove that William Gagne caused the death of the defendant's husband. The court included excerpts from the transcript of the guilty plea and of the defendant's testimony at Gagne's trial to support its conclusion that the defendant had admitted to all of the material elements that the State would be required, at trial, to prove beyond a reasonable doubt. The court also noted that, at the hearing on the motion, the defendant's counsel had indicated that the defendant stood by the testimony she had given earlier.

On December 29, 1982, the defendant was sentenced for a term of thirty years to life. Having timely excepted to the denial of her motion to dismiss, the defendant now appeals to this court.

■ We do not begin our analysis of the contours of accomplice liability on a clean slate. The legislature has clearly spoken on the issue. RSA 626:8, VII, states:

> "*An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense* has not been prosecuted or convicted or has been convicted of a differ-

ent offense or degree of offense or has an immunity to prosecution or conviction or *has been acquitted.*"

(Emphasis added.) This provision is identical to § 2.06(7) of the American Law Institute's Model Penal Code. (Proposed Official Draft 1962) (formerly numbered § 2.04(6).) The comment to this section indicates that the drafters of the Code were aware of the section's implications and made a deliberate policy choice in favor of prosecution of an accomplice although the principal has been previously acquitted. "While inconsistent verdicts of this kind present a difficulty, they are intrinsic to the jury system and appear to be a lesser evil than granting immunity to the accomplice because justice has miscarried in the charge against the person who committed the offense." MODEL PENAL CODE § 2.04(6) comment (Tent. Draft No. 1, 1953).

We have previously interpreted RSA 626:8, VII as "exclud[ing] the guilt of the named principal as an element necessary for the conviction of an accomplice." *State v. Jansen*, 120 N.H. 616, 619, 419 A.2d 1108, 1110 (1980). "The conviction of an accomplice is thus premised upon proof of the commission of the criminal act, rather than on the guilt of the principal." *Id.* The defendant asks us to consider whether the policy considerations underlying the doctrine of collateral estoppel warrant its application, so as to bar the prosecution of the defendant as an accomplice when the named principal has been acquitted, despite the legislative pronouncement in RSA 626:8, VII.

The application of the doctrine of nonmutual collateral estoppel to criminal cases is not mandated by federal constitutional law. *See Standefer v. United States*, 447 U.S. 10, 21–25 (1980). In determining whether that doctrine should apply in criminal cases, we must weigh competing policy considerations. In *Standefer*, the United States Supreme Court reasoned that a criminal case presents considerations which differ from and outweigh the consideration of judicial economy without unfairness to the estopped party, which is the consideration underlying the doctrine's application in the civil context. *See id.* The defendant contends that promoting judicial economy by minimizing repetitive litigation and preventing inconsistent judgments favors the application of the doctrine of nonmutual collateral estoppel in criminal cases, and represents the better selection of controlling policy considerations. We are not persuaded by the defendant's contention and decline, on the facts before us, to extend nonmutual collateral estoppel to criminal cases.

■ The first consideration advanced by the defendant, that of promoting judicial economy by minimizing repetitive litigation, is inapplicable in the present case. The defendant is seeking to apply collateral estoppel to a *prior plea* rather than to a *subsequent trial.* Thus, declining to apply collateral estoppel would not result in repetitive litigation. Furthermore, the defendant concedes that the portion of the complaint alleging that Gagne killed Kaplan could be stricken and the matter remanded for sentencing for conviction of criminal solicitation pursuant to RSA 629:2, I. Therefore, the application of collateral estoppel in the instant case would have little impact in terms of conserving the resources of the court system.

The second consideration advanced by the defendant is the prevention of inconsistent judgments which undermine the integrity of the judicial system. The defendant argues that jailing a woman for paying a man to kill her husband, while freeing the man she claims to have paid, can only result in undermining the public's faith in the judicial system.

■■ While we are not persuaded that the two judgments here are necessarily inconsistent, inconsistent verdicts involving different defendants are not per se impermissible, nor are they, in and of themselves, a basis for setting a conviction aside. *See Harris v. Rivera*, 454 U.S. 339, 345 (1981). We submit that freeing an *admittedly guilty* party does not promote confidence in our judicial system and is not a remedy for what is perceived as an injustice. While speculating as to the reasons for a jury acquittal is as useless as it is imprudent, there is "a significant public interest in not compounding the effect of a possibly erroneous or irrational verdict of acquittal." *Commonwealth v. Brown*, 375 A.2d 331, 335 (Pa. 1977).

■ We are persuaded that the policy considerations presented in a criminal case outweigh the economy concerns of the estoppel doctrine. First, in a criminal case, the State is "often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel." *Standefer v. United States*, 447 U.S. at 22. Among the factors which limit the State's full and fair opportunity, and the factor which is particularly pertinent to the case before us, is the lack of appellate review of an acquittal. "The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted." *Id.* at 23 n.18.

Second, the public interest in enforcing the criminal law is far greater than any public interest in the resolution of private civil disputes. In such private civil cases, "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation." *Standefer v. United States*, 447 U.S. at 24.

Finally, we note that the defendant does not challenge the intelligent, voluntary and knowing nature of her plea and, therefore, its validity. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Roy v. Perrin*, 122 N.H. 88, 97, 441 A.2d 1151, 1157 (1982). The defendant argues, however, that it is the State's burden to establish a nexus between her solicitation of Gagne and the killing of her husband. She further argues that she only admitted to that which was in her personal knowledge, or if beyond, only to what the State said they would prove, *i.e.*, that Gagne killed Morton Kaplan. We believe, however, that the defendant in making these arguments either misperceives or overlooks the significance of her guilty plea.

In waiving indictment and electing to plead guilty to the crime of accomplice to second-degree murder, the defendant gambled on whether the State, if called upon to do so, would prove that Gagne was the one who actually murdered her husband. The risk the defendant took is the risk inherent in all plea situations. She admitted to and does not now contest facts which would be sufficient to substantiate what the State said they would prove. Why the State subsequently, at Gagne's trial, was unable to prove that he caused her husband's death is speculation and does not operate in the defendant's favor here. What the defendant is actually now complaining about is that in retrospect she perhaps made a bad bargain. We decline comment on the wisdom of her choice or the harshness of the sentence received, but we note that the defendant's plea agreement contained a recommendation as to where the defendant should be incarcerated and also a provision allowing the defendant to petition the court every two years for a suspended sentence.

We conclude that the State has met its burden when the defendant admits to all of the essential elements of accomplice liability. The defendant has confessed that, with the purpose of promoting her husband's death, she purposely solicited Gagne and agreed to pay him $5,000 to cause her husband's death, and that her husband was in fact murdered. As we have stated previously in interpreting RSA 626:8, VII, "we interpret the statute's language to exclude the guilt of the named principal as an element necessary for

the conviction of an accomplice." *State v. Jansen,* 120 N.H. at 619, 419 A.2d at 1110.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.