Belknap
No. 90-404

THE STATE OF NEW HAMPSHIRE

v.

JOHN JOHNSON

July 26, 1991

*John P. Arnold,* attorney general (*Peter G. Beeson,* senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. In this interlocutory transfer without ruling, the Superior Court (*McHugh*, J.) transferred, pursuant to Supreme Court Rule 9, the following question of law: Does the doctrine of collateral estoppel allow the State to introduce a specific finding of fact, made by a jury in a prior criminal trial against the defendant, as a conclusive fact which cannot be relitigated by the defendant in a subsequent perjury prosecution? For the following reasons, we hold that collateral estoppel is inapplicable in this case.

We take the facts as they are presented to us in the interlocutory transfer. On December 21, 1989, the defendant was tried by a jury in the Superior Court (*McGuire*, J.) for the misdemeanor offense of operating a motor vehicle after his license had been revoked. RSA 263:64 (Supp. 1990). Prior to the trial, the parties stipulated to the prior revocation. Therefore, the central issue in the case was whether the defendant operated a motor vehicle on the day of the offense. Police Detective David Gunter testified that on April 28, 1989, as he was driving an unmarked cruiser, he recognized the defendant's gold Mazda RX7 coming towards him. The detective testified that he recognized the defendant, whom he has known for ten years, as the operator of the car. He also testified that the defendant was alone in the car and wearing a brown leather jacket. Upon giving chase, the detective found the vehicle parked at a store, but could not find the driver.

The State also called a witness who was at the store where the vehicle was found. He testified that he observed a man, wearing a brown leather jacket, get out of the vehicle and quickly walk away from the store. In court, however, this witness could not identify the defendant as the man who got out of the car.

The defendant was the only witness to testify on his behalf. He admitted that he had driven the vehicle in question on other occasions, but denied doing so on April 28, 1989. He testified that on the day in question he was in the Scandia Trailer Park from 6:00 a.m. until 1:30 p.m., and that Greg Smith had driven the car on that particular day.

In its instructions, the trial court informed the jury that in order to find the defendant guilty they had to find that the defendant actually operated the vehicle on the day in question. *See* RSA 263:64 (Supp. 1990). The jury returned a verdict against the defendant, and the defendant did not appeal.

Subsequently, the defendant was indicted for perjury based upon his testimony at the trial that he was not operating the vehicle. On May 16, 1990, a jury trial on the perjury indictment was held. Just

before the trial began, the State orally requested that the court instruct the jury that the prior conviction conclusively proves that the defendant was the operator of the vehicle on April 28, 1989, thereby eliminating the need for the State to prove that element of its perjury charge. The Trial Court (*McGuire*, J.) denied the motion because the State's timing deprived the defendant of an opportunity to meaningfully argue against it. After several hours of deliberations, the jury informed the court that it could not reach a unanimous decision, and the court declared a mistrial.

A second trial on the perjury indictment was then scheduled. Prior to trial, the State filed a formal motion requesting the invocation of collateral estoppel to prevent the relitigation of the findings of fact made in the operating-after-revocation proceedings. The defendant objected, and the Trial Court (*McHugh*, J.) ordered both counsel to file memoranda of law outlining their respective positions. The trial court recognized that allowing the State's motion would significantly affect how the second perjury trial would be conducted. Upon further determining that this issue has never been raised or addressed by this court, the trial court approved this interlocutory transfer without ruling on the State's motion. *See* SUP. CT. R. 9.

The State asserts that this case, in particular, presents an appropriate opportunity to apply collateral estoppel against a criminal defendant, because the issue on which the State seeks to estop him was the only issue seriously disputed by the defendant and the only issue deliberated by the jury in the prior trial. Therefore, according to the State, the jury finding in the prior trial meets the three preconditions, set forth in *Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987), that must be satisfied in order to apply collateral estoppel. Nevertheless, before we reach the State's procedural arguments favoring the application of collateral estoppel in this case, we must first address the more fundamental question of whether collateral estoppel should be applied against a criminal defendant so as to preclude the litigation of the primary substantive issue in a perjury prosecution.

The State argues that a considerable amount of authority endorses the use of "offensive" collateral estoppel against criminal defendants and that relitigating the issues in this case would thwart judicial economy and could potentially create inconsistency. The State also contends that the defendant was afforded his constitutional right to a trial when he contested and fully litigated the issue of the driver's identity during the operating-after-revocation proceeding. However,

neither the State's policy arguments nor its legal analysis sufficiently resolves the issues which we must confront in this case.

■ Although the doctrine of collateral estoppel has been held applicable in criminal cases, it is not clear from the decided cases to what extent it may be applied offensively against a criminal defendant. Our own precedents recognize the general proposition that the doctrine may be applied in the criminal setting, but the instances where this court has actually barred a criminal defendant, by virtue of collateral estoppel, from contesting an issue resolved by a prior trial are extremely limited. For example, in *State v. Fagan*, 64 N.H. 431, 431, 14 A. 727, 727 (1887), the defendant was indicted for the subsequent offense of keeping lager beer for sale. Therefore, in order to prove the charged offense, the State had to first establish that the defendant had been convicted at an earlier trial of selling intoxicating liquor. *Id.* at 432, 14 A. at 728. Issue preclusion against a criminal defendant may be appropriate where the crime charged is defined by statute as a subsequent offense, and the defendant attempts to relitigate the prior conviction. *See State v. LaRose*, 71 N.H. 435, 435, 52 A. 943, 943–44 (1902) (collateral estoppel not applicable in prosecution for subsequent offense where prior conviction was the result of a plea of *nolo contendere*). However, we do not find the prosecution of a subsequent offense analogous to the case at bar.

Similarly, *State v. Arlin*, 27 N.H. 116, 129 (1853), a case cited by the State, does not involve a prior conviction being used to preclude the relitigation of an issue in a subsequent prosecution of a separate crime. Rather, the defendant in *Arlin* was estopped from using a jury finding regarding the value of stolen goods to contest the initial jurisdictional determination rendered by a police justice. *Id.* at 129–30. Barring a defendant from retroactively contesting a magistrate's pretrial findings by virtue of the ultimate jury verdict is very different from precluding a defendant from contesting a central issue in a subsequent perjury prosecution. Thus, the holding in *Arlin* does not provide authority for the use of collateral estoppel as it is contemplated in the case now before us.

Simply stated, this court has never collaterally estopped a criminal defendant from contesting an essential element of the charge against him or her by virtue of a prior conviction for a separate offense. Our more recent decisions indicate the inherent difficulty involved in applying a tool which originated in the civil law to the criminal setting. *See State v. Collins*, 133 N.H. 609, 612–13, 581 A.2d 69, 70–71 (1990) (refusal to collaterally estop the State from bringing evidence ruled

inadmissible at a prior habeas proceeding); *State v. Fielders*, 124 N.H. 310, 313–14, 470 A.2d 897, 899 (1983) (collateral estoppel not applicable against State, where it had to prove factual element by a higher burden of proof at prior prosecution of a different crime resulting in acquittal); *State v. Kaplan*, 124 N.H. 382, 386–88, 469 A.2d 1354, 1356 (1983) (refusal to apply collateral estoppel to a prior plea). By carefully scrutinizing the use of this tool as an offensive weapon, we have followed the rule that "collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). Accordingly, the State's argument has little support.

The State, however, also relies upon a number of federal cases, as well as cases from other States, which apply collateral estoppel in order to prevent a criminal defendant from relitigating a fact determined by an earlier criminal judgment. The most persuasive of these cases fall into two broad categories, the first of which is alienage cases. *See United States v. Bejar-Matrecios*, 618 F.2d 81, 83–84 (9th Cir. 1980) (collateral estoppel generally applicable, but evidence of previous conviction not admissible under Fed. R. Evid. 403 as trial court failed to explain narrow purpose for which the conviction was offered); *Hernandez-Uribe v. United States*, 515 F.2d 20, 21–22 (8th Cir. 1975) (defendant who pled guilty to unlawfully being in this country was precluded from relitigating issue of alienage), *cert. denied*, 423 U.S. 1057 (1976); *Pena-Cabanillas v. United States*, 394 F.2d 785, 786–88 (9th Cir. 1968) (previous conviction for falsely representing citizenship precluded defendant from relitigating alienage in prosecution for illegal entry); *United States v. Rangel-Perez*, 179 F. Supp. 619, 625–26 (S.D. Cal. 1959) (prior conviction of illegal entry precluded defendant from relitigating alienage in prosecution of second offense of same crime). The other category is child support cases. *See People v. Majado*, 22 Cal. App. 2d 323, 326–27, 70 P.2d 1015, 1017 (1937) (prior conviction for failure to support minor child precluded the relitigation of paternity in subsequent prosecution on same charge, but for a different act); *Commonwealth v. Ellis*, 160 Mass. 165, 165, 35 N.E. 773, 773 (1893) (same).

The underlying rationale justifying the application of collateral estoppel in all of these cases appears to be the need to preserve judicial resources when an unchanging issue has been determined by a prior conviction. For instance, in *People v. Majado supra*, the court characterized the crime as a "continuing one," which could result in "the expense of many trials before this . . . child reaches its majority, in

each of which the fact of parentage must again be established," if collateral estoppel is not applied. Similarly, the *Rangel-Perez* court reasoned that if a defendant was not bound by an earlier determination of alienage, he or she "would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict." *Rangel-Perez, supra* at 626. In our view, the defendant's testimony and the jury conviction at the operation-after-revocation trial create a set of inferences that are very different from the factual element of the defendant's alienage in *Rangel-Perez.*

■ Moreover, we do not find the motivating principles underlying the application of collateral estoppel to be present in the case before us. As we have noted on prior occasions, the question of whether collateral estoppel applies in criminal cases is determined by weighing competing policy considerations. *State v. Kaplan*, 124 N.H. at 386, 469 A.2d at 1355; *see also Hopps v. Utica Mutual Ins. Co.*, 127 N.H. 508, 511, 506 A.2d 294, 297 (1985). The interests that would best be served by the application of collateral estoppel in this case—deterrence of defendants from giving false testimony, and economy in the use of judicial resources—are simply outweighed by those considerations which favor the defendant. "'The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy . . . .'" *Standefer v. United States*, 447 U.S. 10, 25 (1980) (quoting *United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir. 1979)). Some courts have reasoned that the use of collateral estoppel against an accused may cripple the jury's deliberative process and produce such a strong impetus towards the rendering of an automatic guilty verdict that the defendant's right to a fair trial will be violated. *See, e.g., State v. Ingenito*, 87 N.J. 204, 217, 432 A.2d 912, 918–19 (1981). When we weigh these considerations against the policy concerns at issue in this case, we are not moved by the State's circumstance, particularly when the prosecution can present its case simply by calling the two witnesses who testified at the operating-after-revocation trial.

Many courts that have confronted this issue have similarly found that policy considerations generally weigh in the defendant's favor. For instance, in *United States v. DeAngelo*, the United States Court of Appeals for the Third Circuit considered the application of collateral estoppel against a criminal defendant and reasoned that "[a]n accused is constitutionally entitled to a trial de novo of the facts al-

leged and offered in support of each offense charged against him and to a jury's independent finding with respect thereto." 138 F.2d 466, 468 (3d Cir. 1943); *see also State v. Steifel*, 256 So. 2d 581, 585 (Fla. Dist. Ct. App. 1972) (collateral estoppel held inapplicable in subsequent prosecution originating out of the same nucleus of events that led to a conviction for driving while intoxicated); *People v. Longuemire*, 87 Mich. App. 395, 399, 275 N.W.2d 12, 14 (1974) (collateral estoppel not permitted in subsequent perjury prosecution, based upon testimony at previous trial where the defendant was convicted for breaking and entering); *Ingenito, supra* at 209–17, 432 A.2d at 915–19 (collateral estoppel not applicable in subsequent perjury prosecution).

■ The State asserts that the defendant was granted his constitutional right to a jury trial in the first trial where he allegedly perjured himself. However, "due process ... assure[s] an accused a jury trial on *all* issues relating to each element of a given criminal charge." *State v. Steifel supra; see also United States v. Panetta*, 436 F. Supp 114, 120 (E.D. Pa. 1977) (granting collateral estoppel equated to a partially directed verdict of guilty), *aff'd*, 568 F.2d 771 (3d Cir. 1978). Where a prior conviction involves a factual issue that is necessarily determinative of a subsequent prosecution, and the policy considerations justifying the application of collateral estoppel are slight, the State must marshal its evidence and prove its case as completely as it did in the original prosecution. *See* J. HALL, B. GEORGE & R. FORCE, CRIMINAL LAW AND PROCEDURE 1048 (3d ed. 1976). We hold, therefore, that the justifications supporting the State's motion in this particular case are simply outweighed by the defendant's right to require the State to prove, beyond a reasonable doubt, every element of the charge against him.

■ Accordingly, collateral estoppel does not apply in this instance, and the remaining issues are remanded to the trial court.

*Remanded.*

All concurred.