IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                                NO.
AP-75,151



 

 

                               EX
PARTE ROBERT LEE THOMPSON, Applicant

 

                                                                              



                          ON
APPLICATION FOR A WRIT OF HABEAS CORPUS

                                                IN
THE 351ST DISTRICT COURT

                                                          OF
HARRIS COUNTY



 

Cochran,
J., delivered the opinion of the Court in which Meyers, Price, Womack, Keasler, Hervey, and Holcomb, JJ., joined.  Keller, P.J., filed a concurring
opinion.  Johnson, J., dissented.  


 

                                                                  O
P I N I O N

 

Applicant was convicted of capital
murder for the shooting death of Mansor Bhai Rahim Mohammed during an
aggravated robbery at the 7-Evenings Food Store in Houston.  Based upon the
jury=s answers to the special issues set
out in Article 37.071,[1] the trial
court set punishment at death.  This Court affirmed applicant=s conviction and sentence on direct appeal.[2]








Applicant raises six claims in his
habeas corpus application filed pursuant to Article 11.071 of the Texas Code of
Criminal Procedure.  We ordered the parties to brief two of those claims which
we rephrased:

1)        Whether applicant is factually
innocent of the offense of capital murder; and

 

2)        Whether applicant was deprived
of the effective assistance of counsel due to his trial counsel=s failure to request a charge on felony murder.

 

Both of these claims hinge upon the Anewly available@ fact that Sammy Butler, applicant=s triggerman-accomplice, was
convicted of felony-murder after applicant=s trial.   

Applicant=s position on the first claim is that


There is no evidence that Applicant personally
killed the complainant.  To the contrary, the only evidence is that
Butler committed the offense.  Thus, Applicant=s guilt is derivative of Butler=s
guilt.  Simply stated, at most Applicant is guilty of the offense for which
Butler is guilty.

 

Regarding the second claim, applicant
argues that the only viable defense strategy in his trial was to request a jury
instruction on felony-murderBa strategy which succeeded in the accomplice=s trial.  Because applicant=s counsel did not request an
instruction on felony-murder, applicant contends that his trial attorney
provided ineffective assistance of counsel under Strickland v. Washington.[3] 


For the reasons set out below, we
reject both of these claims.  As for his remaining claims, we adopt the trial
court=s findings of fact and conclusions of
law.  Based upon those findings and our independent review, we deny relief.








                                                                             I.

The State=s evidence at trial showed that
applicant and Sammy Butler acted together in planning the armed robbery at the
7-Evenings Food Store.  Applicant told Butler that this would be their last
robbery and it was going to be Aa big one.@  Applicant, armed with a .25 caliber semiautomatic weapon,
went into the convenience store to exchange a beer he had purchased earlier. 
Butler, armed with a .38 caliber revolver, came into the store with him. 

Applicant approached Mubarakali
Meredia, who was tending the counter, pointed his pistol at Mr. Meredia, and
told him to open the cash register and hand over all of the money.  Applicant
shot Mr. Meredia in the abdomen when he did not move quickly enough.  He shot
at Mr. Meredia=s cousin, Mansor Bhai Rahim Mohammed, who also worked at the shop, when
he began running toward the back of the store.[4] 
Applicant then shot Mr. Meredia three more times as he lay on the floor.  He
ordered Mr. Meredia to get up and get the money for him.  Mr. Meredia did so. 
Then applicant put his pistol to Mr. Meredia=s neck and pulled the trigger. 
Nothing happened.  He had run out of bullets.  So applicant hit Mr. Meredia on
the head with the butt of his gun and struck him with the cash register
drawer.  Nonetheless, Mr. Meredia survived.








Applicant took the money and ran out
of the store.  Butler grabbed a stack of lottery tickets as he followed behind
applicant.  Applicant jumped into the driver=s seat of their car, while Butler got
into the passenger=s seat, rolled down his window, and fired two shots at Mr.
Rahim who had run to the front door.  One bullet hit Mr. Rahim in the chest,
and he died.

Based upon this evidence, the jury
convicted applicant of capital murder.  During the punishment phase, the jury
heard evidence that this robbery-murder was only one part of a robbery-murder
spree during which applicant, as the triggerman, had committed two additional
capital murders.[5]  Based upon
all of the evidence submitted, the jury found that applicant would pose a
future risk of danger and that there were no mitigating circumstances that
would call for a life sentence.  The judge sentenced him to death.

Approximately six months after
applicant=s conviction, his accomplice, Sammy Butler, was tried for capital
murder.  The jury in that case returned a guilty verdict on the lesser-included
offense of felony-murder and sentenced Butler to life imprisonment.

                                                                            II.

A. Claim of Factual Innocence








Applicant contends that he is
factually innocent of capital murder because a different jury found Sammy
Butler guilty only of felony-murder.[6]  He argues
that his accomplice liability for the robbery-murder of Mr. Rahim hinges upon
Butler=s conviction in a separate trial
rather than the evidence of his and Butler=s conduct and mental states in
applicant=s own trial.  Applicant argues that Ait is the intent of the killer which
determines whether the offense is a capital murder or a felony-murder.  If the
actual killer intended the death, it is a capital murder.  If he did not, it
was not capital murder.@  Applicant misinterprets the law.

Under Section 7.02(a), a person is
criminally responsible for a capital-murder offense committed by another person=s conduct, if 

(1)       acting with the kind of
culpability required for the offense, he causes or aids an innocent or
nonresponsible person to engage in conduct prohibited by the definition of the
offense; [or]

(2)       acting with intent to promote
or assist the commission of theoffense, he solicits, encourages, directs, aids,
or attempts to aid theother person to commit the offense[.]

Thus, applicant could be found guilty
of capital murder under Section 7.02(a) if he had the intent to kill someone
during this aggravated robbery, and (1) he caused or aided a totally innocent
person to shoot and kill Mr. Rahim, or (2) he solicited, encouraged, directed,
or aided Sammy Butler to commit capital murder.[7] 


Furthermore, under Section 7.02(b), a
person may be found guilty of capital murder  if the following conditions are
met:

[I]f, in the attempt to carry out a conspiracy to
commit one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.

 








The jury in this case was instructed
that it could find applicant guilty of capital murder in any of three different
ways:  as the actual triggerman; as a party to Sammy Butler=s shooting of Mr. Rahim under Section
7.02(a)(2); or as a co-conspirator to the aggravated robbery under Section
7.02(b).  Under the first two theories, the jury was required to find that
applicant himself intended the death of Mr. Rahim; under the third theory the
jury was required to find that applicant should have anticipated Mr. Rahim=s death as a consequence of his and
Butler=s agreement to commit aggravated
robbery and Mr. Rahim=s death occurred in furtherance of that crime.

If the jury found that applicant and
Sammy Butler conspired to commit an aggravated robbery, and either one of them
shot and killed Mr. Rahim (intentionally or unintentionally), either or both of
them may be convicted of capital murder if Mr. Rahim was killed in furtherance
of the aggravated robbery and his murder was one that should have been
anticipated as a part of this aggravated robbery.  

There is nothing in Texas law that
limits applicant=s criminal responsibility for the conduct of his accomplice,
Sammy Butler, to only those specific crimes for which a jury has convicted
Butler.  In fact, Texas law is exactly the opposite.  Section 7.03(2) of the
Penal Code states that it is no defense 

that the person for whose conduct the actor is
criminally responsible has been acquitted, has not been prosecuted or
convicted, has been convicted of a different offense or of a different type or
class of offense, or is immune from prosecution.[8]








 








It is
well-established that one accomplice may be found guilty of a different, more
serious offense than other accomplices.[9] 
Indeed, the acquittal of the principal does not prevent conviction of his
accomplice.[10] 
And it does not matter whether the acquittal of the principal occurs before or
after the accomplice=s trial.[11] 
What matters under Section 7.02(a) is the criminal mens rea of each
accomplice; each may be convicted only of those crimes for which he had the
requisite mental state.  As Professor LaFave notes:








The notion that the accomplice may be convicted, on an
accomplice liability theory, only for those crimes as to which he personally
has the requisite mental state, is applicable in a variety of circumstances. 
It means, for example, that one may not be held as an accomplice to the crime
of assault with intent to kill if that intent was not shared by the
accomplice.  But this limitation has proved most significant in the homicide
area, where the precise state of mind of the defendant has great significance
in determining the degree of the offense.  To determine the kind of homicide of
which the accomplice is guilty, it is necessary to look to his state of mind;
it may have been different from the state of mind of the principal and they
thus may be guilty of different offenses.  Thus, because first degree murder
requires a deliberate and premeditated killing, an accomplice is not guilty of
this degree of murder unless he acted with premeditation and deliberation. 
And, because a killing in a heat of passion is manslaughter and not murder, an
accomplice who aids while in such a state is guilty only of manslaughter even
though the killer is himself guilty of murder.  Likewise, it is equally
possible that the killer is guilty only of manslaughter because of his heat of
passion but that the accomplice, aiding in a state of cool blood, is guilty of
murder.[12] 

 

Thus, what is
essential to applicant=s conviction of capital murder as a party
under Section 7.02(a)(2)[13]
is evidence that supports a finding, beyond a reasonable doubt, that he
intended the death of Mr. Rahim and that he assisted Sammy Butler in causing
that death.[14] 


The evidence of
applicant=s intent to kill is not merely sufficient, it is
overwhelming:

*        Applicant
came to the convenience store armed with a semiautomatic pistol;

*        Applicant
knew that Butler came to the convenience store armed with a .38 revolver;








*        Applicant
intentionally pointed his pistol at Mr. Meredia and demanded money;

*        Applicant intentionally
shot Mr. Meredia in the abdomen;

*        Applicant
intentionally shot Mr. Meredia three more times as he lay on the ground;

*        Applicant
intentionally shot at Mr. Rahim who was fleeing to the back of the store;

*        Applicant
intentionally put his semiautomatic pistol against Mr. Meredia=s neck and pulled the trigger; the
only reason Mr. Meredia did not die from that intentional act was because
applicant=s revolver was out of bullets; 

*        Applicant
intentionally hit Mr. Meredia over the head with the butt of his revolver;

*        Applicant
intentionally struck Mr. Meredia with the cash register drawer.

 

From this evidence
of applicant=s obvious intent to kill Mr. Meredia and his repeated
attempts to do so, any reasonable juror could conclude that applicant also
intended that his accomplice, Sammy Butler, kill Mr. Rahim.  

Applicant argues
that, even though he may have acted with malice aplenty and attempted to kill
and intended to kill, the offense of capital murder was never committed by
anyone because a different jury found that Butler did not intentionally kill
Mr. Rahim. He relies upon the first sentence of Section 7.03 which reads:

In a prosecution in which an actor=s criminal responsibility is based
on the conduct of another, the actor may be convicted on proof of commission
of the offense and that he was a party to its commission . . . .[15] 


 








Applicant argues
that Butler=s subsequent acquittal of capital murder proves that,
under Section 7.03, no capital murder was ever committed.  Applicant misreads
Section 7.03.  That provision applies to the proof offered at applicant=s trial, not the
evidence offered in some other trial.  It was in applicant=s trial that the
State bore the burden of offering Aproof of
commission of the offense@ of capital murder.  And indeed it did. 
There is evidence aplenty that Sammy Butler, as well as applicant, intended to
cause Mr. Rahim=s death:

*        Butler came
to the convenience store armed with a .38 revolver;

*        Butler knew that
applicant came to the convenience store armed with a semiautomatic pistol;

*        Butler knew
that applicant shot Mr. Meredia several times;

*        Butler shot
at Mr. Rahim and another customer while applicant was shooting at Mr. Meredia;

*        Butler
threatened to shoot other customers while applicant was grabbing the money from
the cash register;

*        Butler did
shoot in the direction of Mr. Rahim a second time while both robbers were still
in the store;

*        After
applicant and Butler got into their getaway car, Butler rolled down the
passenger-side window and shot Mr. Rahim who had run to the door of the store;

*        Butler shot
at Mr. Rahim twice;

*        One of those
shots hit Mr. Rahim in the chest and killed him.

*        Applicant
told police during his oral confession that Butler Akept shooting.  He unloaded and I
unloaded.@[16]

 








It might be
possible to conclude that Butler did not aim at Mr. Rahim or intend to shoot
him in the chest.  But applicant=s jury was
certainly entitled to believe that Butler=s two shots were
not a sheer accident, and that Mr. Rahim=s death was not
the result of a wayward bullet that fortuitously ended up striking the unlucky
man.[17] 
It was entitled to conclude that Butler intended precisely what occurredBMr. Rahim=s death.[18] 
And it was also entitled to conclude that applicant intended that Butler shoot
and kill Mr. Rahim just as applicant surely would have killed Mr. Meredia if
only he had not first run out of bullets.

In sum, there was
ample evidence offered at applicant=s trial that Sammy
Butler committed the offense of capital murder and that applicant assisted or
encouraged him in that 

endeavor by his
own acts of attempting to commit the capital murder of Mr. Meredia.   The fact
that the jury in Butler=s trial declined to convict him of capital
murder does not affect the validity of applicant=s capital murder
conviction.[19] 









Thus, although the
verdict in Butler=s trial may be Anewly available
evidence,@ it is not evidence that shows (or even tends to show)
applicant=s innocence of capital murder.  Therefore, we adopt
the trial court=s findings of fact and conclusions of law
concerning applicant=s claim of factual innocence.

B.  Claim of
Ineffective Assistance of Counsel

Applicant also
contends that his trial counsel provided constitutionally deficient assistance
because he failed to request an instruction on the lesser-included offense of
felony-murder.[20] 
Applicant further contends that his counsel=s deficient
performance probably caused the jury to return a verdict of capital murder
rather than felony-murder.  Applicant raised this ineffective assistance claim on direct appeal,
arguing that trial counsel should have Arequest[ed] a lesser-included offense
charge as it would apply to the offense of murder.@[21]  This Court rejected that claim
because the record did not contain sufficient information concerning trial
counsel=s strategy.  It does now.

In his affidavit, applicant=s trial counsel stated that the
defense strategy that he and his co-counsel decided upon was that applicant did
not anticipate Butler=s murder of Mr. Rahim:








The basis of our cross-examination, and defensive
strategy was that Mr. Thompson knew of and intended to participate in an
aggravated robbery, but in no way did he either know or anticipate that someone
would be killed, especially under the circumstances of the complaining witness= death. . . . This was the argument that I made to the
jury during the guilt phase of the trial.  However, based on the confessions,
and the actions of Mr. Thompson while inside the store, i.e. Mr. Thompson shot
someone, who did not die, Mr. Williams and I concluded that a request for a
lesser included instruction of felony murder was not shown by the evidence.[22]

 

Thus, trial counsel made the reasoned
strategic decision that their strongest argument was that applicant did not and
could not have anticipated that Butler would shoot Mr. Rahim as the two
departed from the convenience store.  That argument was at least as strongBif not strongerB than the argument that Butler did
not intend to kill Mr. Rahim and that his act of shooting at him twice was an
unforeseeable accident, albeit an act clearly dangerous to human life. 
Applicant=s attorney noted that this defensive position was carried through to the
punishment phase concerning the Aanti-parties@ special issue:[23]








With regard to Special Issue 2, the argument was
centered on 1.  The fact that Mr. Thompson was not the shooter.  2. That the
manner in which the complainant was killed, i.e. as they drove away, Mr. Butler
shot in the dark and the complainant was standing at the door.  Mr. Thompson
was in no way responsible for the death of Mr. Rahim, and could not have
anticipated that Butler would shoot as they were driving away and it was dark. 
3.  That Mr. Thompson=s intent was to commit an aggravated robbery and
nothing more, which he did. 

 

As applicant=s counsel noted, this strategy was
ultimately unsuccessful, perhaps because of the evidence of applicant=s two other capital murders.  But
counsel did not create those facts.  Applicant now argues that he was not
entitled to any charge on the lesser-included offense of aggravated robbery,
but he was entitled to a charge on felony-murder.  He states that, Agiven those undisputed facts [of
applicant=s attempts to kill Mr. Meredia and shoot Mr. Rahim] no one could
plausibly argue that Applicant should not have reasonably anticipated that Butler
might engage in violence, including shooting a person.@  Such a strategy, argues applicant,
is Alaughable.@   








Applicant notes that in Solomon v.
State,[24] this Court
held that a person charged with capital murder is not entitled to a
lesser-included instruction on aggravated robbery unless there is evidence
showing one of three things:  (1) there was no murder; (2) the murder was not
committed in furtherance of a conspiracy; or (3) the murder should not have
been anticipated.[25]  In this
case, as applicant candidly admits, there is ample evidence that (1) there was
a murder; (2) the murder was committed in furtherance of a conspiracy; and (3)
the murder should have been anticipated.  Thus, he argues, it was error to
charge the jury on this lesser included offense.  Perhaps so, but it certainly
did not harm applicant, and at least it gave the defense attorneys something
solid to argue during closing arguments.

Applicant then turns around and
contends that counsel should have requested a lesser-included instruction on
felony-murder.  But submission of felony-murder is not warranted unless there
is evidence that shows: 

(1)       for purposes of party liability
under Section 7.02(a)(2), applicant himself did not intend the death of Mr.
Rahim or another; 

 

(2)       for purposes of conspiracy
liability under Section 7.02(b), Butler=s
act of shooting Mr. Rahim was not committed in furtherance of a conspiracy; or 

 

(3)       for purposes of conspiracy
liability under Section 7.02(b), applicant should not have anticipated that
Butler would shoot Mr. Rahim.  

 

In arguing that he was not entitled
to a charge on aggravated robbery, applicant agrees that there is no evidence
supporting prong (2) or (3).  And he fails to point to any evidence that
affirmatively shows that applicant himself did not intend the death of Mr.
Rahim or another.

Applicant relies, instead, upon his
oral confession to the police in which he describes Butler=s action and surmises about Butler=s intent:

Well, he [Butler] shootsBAnd, the man was coming up and was going back.  He just shot basically
at the window just to make the man go run back in the store as we got away.

 








This description of Butler=s actions and intent, however, is not
evidence that affirmatively shows that applicant had no intent to kill.[26] 
And, under the law of parties, it is applicant=s intent that is determinative of his
guilt for either capital murder or felony-murder.  








The evidence was clearly sufficient
to establish that applicant participated in the murder of Mr. Rahim and
intended his death.  The question concerning an entitlement to the
lesser-included of felony-murder is whether the evidence would permit a
rational jury to make a contrary finding:  that is, based upon the evidence,
could a rational jury conclude that Butler acted entirely alone in the shooting
death of Mr. Rahim, and that applicant did not intend or anticipate this
murder?[27]  That
evidence need be only more than a mere scintilla, and it may be impeached or
contradicted, but it must be sufficient, if believed, to at least permit a
rational jury to return a verdict on the lesser-included offense.[28] 
Under this standard, applicant was not entitled to a charge on felony-murder
and therefore his counsel was not ineffective for failing to request such a
charge.[29]








Applicant argues that there was no
downside to asking for an instruction on the lesser-included offense of
felony-murder.  But there might well have been a very serious downside had
applicant offered any evidence of lack of intent or had he engaged in any
cross-examination that might raise an issue concerning his lack of intent to
kill.  Once applicant opens the door to the issue of murderous intent, the
State would presumably walk right through that door with the evidence of the
two extraneous capital murders that applicant himself committed to prove that
he had a murderous intent on this occasion just as he had on those two other
occasions.[30]  

When judging an attorney=s conduct in retrospect, we cannot
assume that only his conduct might have been different.  We must assume that,
as in a chess game, if a defendant hypothesizes a different strategy or move by
his pawn or queen, the State would have altered its strategy and made a
different move with its chess pieces as well.  In this case, applicant=s case at the guilt phase might have
been considerably worsened had he attempted to raise an issue concerning his
intent to kill.  Therefore, we cannot conclude  that his counsel=s chosen strategyBto forego an attack upon the State=s case concerning his own intent to
kill and instead concentrate on a plausible argument (albeit largely
unsupported by evidence) that applicant could not have anticipated Butler=s act of shooting Mr. RahimBwas a constitutionally ineffective
one.

We therefore adopt the trial court=s findings of fact and conclusions of
law, and based upon those findings and our own independent review, we deny
relief on all claims.

Delivered: November 9, 2005

Publish









[1] Tex. Code
Crim. Proc. art. 37.071(b) & (e)(1).





[2] Thompson v. State, No. 73,128 (Tex. Crim.
App. June 26, 2003) (not designated for publication).





[3] 466 U.S. 668 (1984).





[4] At Butler=s trial, the State offered evidence that Butler
pulled out his .38 revolver, also shot at Mr. Rahim, and threatened several
other customers during this time.





[5] Applicant had three pending capital murder charges
at the time of trial.





[6] According to applicant, Butler=s conviction of the
lesser-included offense of felony-murder Ais
a jury finding after a full trial, a finding binding upon the State under the
principles of collateral estoppel.  Both Butler=s
acquittal of capital murder and his availability to testify are facts which
were unavailable at the time of Applicant=s
trial.@ 





[7] Put another way, the evidence must show that, at
the time of the offense, the parties were acting together, each contributing
some part toward the execution of their common purpose.  Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1994).





[8] Tex. Pen.
Code ' 7.03(2); see, e.g., Singletary v. State, 509
S.W.2d 572, 578 (Tex. Crim. App. 1974) (noting that Aan accomplice is not entitled to a new trial or reversal just because a
subsequently tried principal has been acquitted.  The fact that another jury
acquitted the principal in a subsequent trial does not by itself entitle an
accomplice to the same offense to a new trial.  In many instances different
juries reach opposite results on the same evidence.@) (citations omitted); Reece v. State, 521 S.W.2d 633, 634-35
(Tex. Crim. App. 1975) (either of two co-defendants could be convicted of
aggravated robbery although one of them was convicted only of Asimple@ robbery; Athe evidence was sufficient to support a conviction
of aggravated robbery for either defendant@); see generally, Donald M. Zupanec, Acquittal
of Principal, or His Conviction of Lesser Degree of Offense, as Affecting
Prosecution of Accessory, or Aider and Abettor, 9 A.L.R. 4th 972
(1981 & 2005 Supp.).





[9] See generally, 1 Charles E. Torcia, Wharton=s Criminal Law ' 34 (15th ed. & 2004 Supp.); Rollin M. Perkins & Ronald N. Boyce,
Criminal Law, 582 (1957); see, e.g., People v. Garcia, 52 P.3d
648, 652 (Cal. Ct. App. 2002) (noting that A[b]ecause an
aider and abettor may potentially be guilty of a more serious offense than the
shooter . . . the absence of a shooter=s conviction is not dispositive of the aider and
abettor=s exposure to liability@); State v. Kaplan, 469 A.2d 1354, 1355 (N.H. 1983) (conviction
of wife who pleaded guilty to accomplice role in murder of husband would not be
reversed even though principal, an alleged contract killer, was acquitted, and
noting that A>conviction of an accomplice is thus premised upon proof of the
commission of the criminal act, rather than on the guilt of the principal=@) (citation
omitted); Jeter v. State, 274 A.2d 337, 338-39 (Md. 1971) (collecting
cases and concluding that virtually all American jurisdictions hold that the
subsequent acquittal of a principal does not affect the trial or conviction of
an accomplice).  The North Carolina Supreme Court  has traced this principle
back three hundred years to Wallis= Case,
1 Salk. 334.  See State v. Whitt,
18 S.E. 715, 716 (N.C. 1893).  The Model Penal Code also adopts this position.  See
Model Penal Code ' 2.06(7) (2001) (accomplice can be convicted Athough the person claimed to have committed the offense . . . has been
acquitted@).





[10] The controlling case on this issue is Standefer
v. United States, 447 U.S. 10 (1980), in which Standefer was accused of
aiding and abetting a revenue official, Cyril Niederberger, in accepting
compensation beyond that authorized by law.  Niederberger was acquitted of
accepting unlawful payments.  After Niederberger=s trial and
before his own trial, Standefer moved to dismiss the charges and argued that he
could not be convicted of aiding and abetting the principal when the principal
had been acquitted.  His motion was denied, he was convicted, the court of
appeals affirmed, and the Supreme Court granted certiorari.  Standefer raised
two issues before the Supreme Court:  (1) the federal aiding and abetting
statute was not intended to authorize prosecution of an aider and abettor after
the principal had been acquitted; and (2) the doctrine of nonmutual collateral
estoppel barred the government from prosecuting him after Niederberger=s acquittal. 

The
Supreme Court traced the origins of aiding and abetting back to English common
law and noted that at early common law all parties to a felony received the
death penalty; therefore, certain procedural rules were developed to shield
accessories from such severe punishment.  447 U.S. at 15.  Among them was the
rule that an accessory could not be convicted without the prior conviction of
the principal offender:  AIn every way, >an accessory [followed], like a shadow, his
principal.=@  Id. (quoting 1 J.
Bishop, Criminal Law ' 666 (8th ed. 1892)). This procedural bar applied
only to the prosecution of accessories in felony cases, not in misdemeanor
cases where an accessory could be prosecuted after the principal was acquitted.
 Id. at 15-16.  In 1848, Parliament enacted a statute which permitted an
accessory to be convicted even though the principal was acquitted.  Id.
at 16.  Congress followed in 1899 by enacting the first statute in this country
which provided that Aall persons concerned in the commission of a crime,
whether it be felony or misdemeanor, and whether they directly commit the act
constituting the crime or aid and abet in its commission, though not present,
are principals, and to be tried and punished as such.@  Id. at 17-18.  The Supreme Court, in its discussion of the
historical law on aiding and abetting, stated, ARead against
its common-law background, the provision evinces a clear intent to permit the
conviction of accessories to federal criminal offenses despite the prior
acquittal of the actual perpetrator of the offense.@ Id. at 19.  Thus, all participants in a crime Aare punishable for their criminal conduct; the fate of other
participants is irrelevant.@  Id. at 20.  

Moving to the issue of collateral estoppel, the
Court noted that several aspects of criminal law make nonmutual estoppel
against the government when a principal is acquitted inappropriate.  Id.
at 21-22. These include limited discovery rights, a prohibition against a
directed verdict on behalf of the government, a bar against the government
seeking appellate review of an acquittal, and a jury=s unfettered right to acquit out of compassion or compromise.  Id.
at 22.  Furthermore, A[t]he application of nonmutual estoppel in criminal
cases is also complicated by the existence of rules of evidence and exclusion
unique to our criminal law.@  Id. at 23.  Thus, evidence that is
admissible against one accomplice may be inadmissible against others,
preventing the government from presenting all of its possible proof against
some of the participants in the crime.  Id. at 23-24.  Although Asymmetry of results may be intellectually satisfying, it is not
required@; thus, the acquittal of a principal does not bar
the conviction of an accomplice.  Id. at 25.





[11] See Owens v. State, 867 A.2d 334, 340 (Md.
Ct. Spec. App. 2005) (noting that the Aclear answer given by other courts and treatise
writers@ is that even after a principal has been acquitted
of a crime, another person can be convicted for his role in aiding and abetting
the commission of that same crime). 





[12] 2 Wayne
R. LaFave, Substantive Criminal Law '
13.2(c) at 346-47 (2d ed. 2003).





[13] Because of our disposition of this first claim
under Section 7.02(a)(2), we need not address the applicability of applicant=s conspiracy liability under Section 7.02(b) which does not require
proof of applicant=s intent to cause Mr. Rahim=s death.





[14] The jury was not instructed, during the guilt
stage, on the law of transferred intent under Section 6.04(b).  Thus, the
charge required the jury to find that applicant intended the death of Mr.
Rahim, rather than some other person under Section 7.02(a)(2).





[15] Tex. Pen.
Code ' 7.03 (emphasis added).





[16] Applicant=s confession was admissible at his own trial but not
at Butler=s trial.





[17]  As a part of this claim, applicant contends that
he has Anewly available@ evidence from Butler who would testify that he did
not intend to kill Mr. Rahim.  But this is not newly availableB Butler, like applicant, gave a written confession shortly after his
arrest.  Applicant=s trial counsel stated that he was familiar with the
confession in which Butler admitted his participation in the robbery at the
7-Evenings store and that he shot and killed Mr. Rahim.  Butler  stated then
(and presumably would state now) that he did not intend to kill Mr. Rahim. 
Applicant=s trial counsel was aware of Butler=s confession at the time of trial and Butler=s assertion that he did not intend to kill Mr. Rahim matched applicant=s same assertion about Butler=s conduct in his confession.  Applicant=s counsel stated that there was nothing in Butler=s confession that caused him to changeBor want to
changeBhis overall trial strategy.

The jury in Butler=s trial
apparently believed that statement, while the jury in applicant=s trial did not believe that Butler unintentionally killed Mr. Rahim. 
We cannot dispute the right of two different juries in two different trials to
reach two different verdicts concerning two different defendants based upon two
different sets of admissible evidence.





[18] It is both a common-sense inference and an
appellate presumption that a person intends the natural consequences of his
acts, Whitlock v. State, 146 Tex. Crim. 594, 600, 177 S.W.2d 205, 208
(1943), and that the act of pointing a loaded gun at someone and shooting it
toward that person at close range demonstrates an intent to kill.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Flannagan v. State,
675 S.W.2d 734, 744-45 (Tex. Crim. App. 1984) (op. on reh=g);  Womble v. State, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981).





[19] Applicants argues that his Afactual innocence@ claim is cognizable under Schlup v. Delo,
513 U.S. 298 (1995), as one involving both a constitutional violation and a Agateway@ innocence claim.  But it is not.  Applicant makes
no showing that he is innocent of capital murder or that the State
violated his constitutional rights by trying him before his accomplice, Sammy
Butler.





[20] Applicant asserts this claim under both the Sixth
Amendment to the United States Constitution and under the Texas Constitution,
article I, ' 10.  Because he provides no separate analysis under
the Texas Constitution, we will presume that applicant=s position is that the two provisions are identical for purposes of his
claim.  See Heitman v. State, 815 S.W.2d 681, 690 n.22 (Tex. Crim. App.
1991).





[21] On direct appeal, applicant contended that trial
counsel should have requested an instruction on simple murder because the jury
might have believed that applicant only Aknowingly@ caused the death of the victim.  





[22] At the time defense counsel was appointed,
applicant had three pending capital murder charges and three aggravated robbery
charges.  Applicant had given oral confessions admitting his involvement in all
of those pending cases.  Concern about the admissibility of extraneous offenses
would surely have been at the forefront of defense counsel=s mind as he planned his strategy for the guilt phase of this trial.





[23] That special issue read as follows:

Do you
find from the evidence beyond a reasonable doubt that Robert Lee Thompson, the
defendant himself, actually caused the death of Mansor Bhai Rahim Mohammed, on
the occasion in question, or if he did not actually cause the death of Mansor
Bhai Rahim Mohammed, that he intended to kill Mansor Bhai Rahim Mohammed or
another, or that he anticipated that a human life would be taken?

This
charge, unlike the one at the guilt stage, did incorporate the doctrine of
transferred intent.





[24] 49 S.W.3d 356 (Tex. Crim. App. 2001).





[25] Id. at 369.               





[26] See Salinas v. State, 163 S.W.3d 734, 741-42
(Tex. Crim. App. 2005).  In Salinas, another capital murder case involving
the law of parties, we rejected the contention that defense counsel was
ineffective for failing to request an instruction on felony-murder.  Id. 
There, as here, A[t]he critical question is whether the evidence showed
that appellant (as a principal or party) had the intent only to rob or to
kidnap, and he did not have the intent to kill.@  Id.
at 742.  We noted in Salinas that A[w]hether appellant was the actual actor or
criminally responsible for the acts of his cohorts by virtue of the law of
parties, the evidence shows not only an intent to commit robbery or a
lesser included offense, but also the intent to kill.@  Id. (emphasis in original).  The same is true in the present
case; applicant points to no evidence that affirmatively demonstrates his lack
of intent to kill.





[27] See Aguilar v. Dretke, ___ F.3d ___, __,
2005 U.S. App. LEXIS 22031 *9-11 (5th Cir., Oct. 12, 2005) (holding
that Texas capital murder defendant was not entitled to charge on
lesser-included offense of murder when co-defendant caused death of second
victim but defendant had motive to kill victim or his family members).  As the
Fifth Circuit explained:

            The evidence was clearly sufficient to
establish that Aguilar participated in the  murder of Leo, Sr. The question is
whether the evidence would permit a reasonable jury to make a contrary
finding:  that Quiroz acted alone in Leo's murder without encouragement or
other participation by Aguilar.  After reviewing the record, we are satisfied
it would not permit a rational jury to find that if Aguilar is guilty, he is
only guilty of murdering Annette.  As the district court pointed out,
Aguilar-and not Quiroz-had the motive to kill Esparza or his family members. 
The evidence established that Aguilar had been to the trailer home on several
earlier occasions, threatening Esparza, and had previously discussed with
Annette Chavez the whereabouts of Esparza. Aguilar entered the Esparzas= trailer with his eighteen-year-old nephew (Quiroz), who had no
connection to the Chavezes or Esparza or with Aguilar=s marijuana trafficking.  The two entered the trailer with a firearm
and proceeded to severely beat the Chavezes.  Then, the couple was shot Aexecution style@ within minutes of each other.  There is no evidence
in the record supporting Aguilar=s contention that he did not have intent to kill
both Leo and Annette when he and Quiroz entered the residence.  A reasonable
jury, who would find that Aguilar was the second shooter in this double murder,
could not find that he did not encourage or otherwise participate in the
shooting of Leo, Sr.  We therefore conclude that the district court did not err
in rejecting Aguilar=s Beck claim.

Id. at *9-11.





[28] Rousseau v. State, 855 S.W.2d 666, 672-73
(Tex. Crim. App. 1993) (Asome evidence must exist in the record that would
permit a jury rationally to find that if the defendant is guilty, he is
guilty only of the lesser offense@) (emphasis in original); see also Cordova v.
Lynaugh, 838 F.2d 764, 767 (5th Cir. 1988) (holding that a
lesser included offense instruction should be given Aif the evidence would permit a jury rationally to find [a defendant]
guilty of the lesser offense and acquit him of the greater@).





[29] Salinas, 163 S.W.3d at 742; see also Fuentes
v. State, 991 S.W.2d 267, 272-73 (Tex. Crim. App. 1999) (counsel in capital
murder trial not ineffective for failing to request lesser-included offense of
felony-murder instruction because Athere is no evidence upon which a jury could
rationally have found that appellant did not intend to kill when he shot the
deceased.@).





[30] See, e.g., Navarro v. State, 154 S.W.3d 795,
797-98 (Tex. App.BHouston [14th Dist.] 2004, pet. ref=d) (evidence of other violent acts toward his intended victim
admissible under Rule 404(b) in capital murder trial to prove both defendant=s intent to kill and absence of mistake in attempting to kill his
intended victim); Johnson v. State, 932 S.W.2d 296, 302-04 (Tex. App.BAustin 1996, pet. ref=d) (in capital murder trial, evidence of extraneous
offense was admissible to prove the culpable mental state of intent to kill
when the accused presented evidence to dispute that intent).